THE STATE OF MISSOURI, Respondent, v. J. HOFFMAN, Appellant.

Kansas City Court of Appeals, June 13, 1892.

1.  **Peddlers**: WHO NOT. Defendant went from house to house displaying samples carried with him in a case, and taking orders for his firm. If his firm approved the orders, it shipped the goods to defendant, who ·delivered them, and took the cash payment, with an obligation to the firm for the balance, which was collected by the firm. *Held*, the defendant was not a peddler within the statute. [ELLISON, J., *dissents* in a separate opinion.]

2.  **Definitions**: PEDDLERS: DRUMMERS. Various definitions of peddlers and drummers are found in the opinion.

*Appeal from the Jasper Circuit Court.*—HON. M. G. McGREGOR, Judge.

REVERSED.

*Crittenden, Styles & Gilkeson*, for appellant.

*J. H. Dryden* and *Randall Dryden*, for respondent.

GILL, J.—The defendant was charged in the court below, tried and found guilty of going from place to place in the county of Jasper, and selling goods, wares and merchandise as a peddler, without having a license therefor as provided for in chapter 125, Revised. Statutes, 1889. From the judgment imposing a fine the defendant has appealed to this court.

The decisive question is whether, under the facts detailed in evidence, the business transacted by the. defendant constituted him a peddler within the meaning of the statute. At the time complained of defendant Hoffman was in the employ of Conroy & Haglage, merchants at Kansas City, soliciting purchasers for

different articles of merchandise. He carried along with him a case or grip-bag filled with various articles as samples, which he exhibited from house to house. He did not sell these articles, but simply took orders from the samples thus shown. The orders in all cases were addressed to the parent house at Kansas City. If the orders were approved by Conroy & Haglage, at Kansas City, the goods were then shipped to defendant, and then he delivered them to the purchasers, taking from them the cash payment, with an obligation to pay to his employers the balance in future installments, and these deferred payments were subsequently collected by the Kansas City firm. It was on account of the conduct of business of this nature—visiting different residences in Joplin, displaying his samples, soliciting and taking orders for his firm—that the defendant brought on himself this prosecution for selling merchandise as a peddler, without having obtained a license.

Was defendant a peddler? We think not. His employment did not fill the definition of the word as generally understood. The popular signification of peddler is said to be "a small retail dealer, who, carrying his merchandise with him, travels from house to house, or from place to place, either on foot or on horseback or in a vehicle drawn by one or more animals, exposing his goods for sale, and selling them. The distinctive feature consists in the fact that a peddler goes from house to house, or place to place, carrying his articles of merchandise with him, and concurrently sells and delivers." *Ballou v. State*, 87 Ala. 145. "A peddler," says ENDICOTT, J., in *Commonwealth v. Farnum*, 114 Mass. 270, "is an itinerant trader, who goes from place to place and from house to house, carrying for sale and exposing to sale the goods, wares or merchandise which he carries." "Peddlers, persons who travel about the

country with merchandise for the purpose of selling."
Bouvier. Webster's definition is: "A traveling trader;
one who carries about small commodities on his back,
or in a cart or wagon, and sells them." Our statute,
too, contains the same general idea of peddlers:
"Whoever shall deal in the selling of * * * goods,
wares and merchandise * * * by going from place
to place to sell the same is declared to be a peddler."
R. S. 1889, sec. 7211.

Now the defendant carried nothing to be sold and
delivered. He had with him only the samples, and
these he did not sell. He only solicited orders for goods
which orders were to be forwarded to his employer,
and the sale was not complete until acceptance by them
and delivery at a future day. Defendant was more
properly a commercial traveling agent, soliciting busi-
ness for his house.

That our statute has in view the peddler carrying
his goods, selling and delivering concurrently, is further
seen by reference to section 7217 of the chapter on
peddlers. There, in fixing the rate of tax license, the
statute reads: "There shall be levied and paid on all
peddler's licenses a state tax of the following rates:
*First,* if the peddler *travel and carry his goods on foot,*
$3 for every period of six months; *second,* if (he travel
and carry his goods on) one or more horses or other
beasts of burden, $10 for every period of six months;
*third,* if (he travel and carry his goods in) a cart or
other land carriage, $20 for every period of six months,"
etc., showing clearly that the peddler, as understood
by the legislature, is he who carries his goods to be
sold about with him.

We must not, however, be understood as holding
that a peddler will be permitted to fraudulently evade
the law, by storing his goods at some point, and then
go from house to house exhibiting samples and taking

orders to be followed with a future delivery. No such fraud on the statute would be allowed. We do not think, however, that the traveling agent, or drummer, so-called, who goes from place to place soliciting orders whether at retail or wholesale, or whether to be delivered at residence, shop or store, or whether such orders are taken from sample or other description, comes within the proper definition of peddler.

In our opinion, therefore, defendant was not a peddler within the meaning of the law, and, hence, not subject to the license tax imposed by the statute relating to peddlers and their licenses. Among others, the following adjudicated cases sustain us: *In re Houston,* 47 Fed. Rep. 539; *Emmons v. City of Lewiston,* 24 N. E. Rep. 58; *Ballou v. State, supra; Commonwealth v. Farnum, supra; City of Kansas v. Collins,* 34 Kan. 434.

Judgment reversed.    SMITH, P. J., concurs; ELLISON, J., dissents.

ELLISON, J. (*dissenting*).—I do not agree to the foregoing opinion, and the question is of such importance to the mercantile interests of the state that I will state the reason of my objection.

The opinion overlooks the important fact that the statute of this state itself defines who shall be considered a peddler. So that definitions of a peddler drawn from other sources are of no assistance in arriving at a correct conclusion as to the character of the act committed by this defendant. Our statute is as follows: "Sec. 7211. *Certain persons declared to be peddlers.* Whoever shall deal in selling of patents, patent rights, patent or other medicines, lightning rods, goods, wares and merchandise, except books, charts, maps and stationery, by going from place to place to sell the same, is declared to be a peddler.".

It ought not to require any argument to show that, if defendant did what is described in this statute, then he is a peddler, and, therefore, the only question is, did he do any of the acts named in this statute? That is, did he deal in selling goods, wares and merchandise by going from place to place to sell the same? The testimony shows that he was going from house to house on foot offering to sell and selling to private families knives, forks, spoons, clocks, etc. He says he only sold by sample; that he exhibited his samples and took orders, which he sent in to Kansas City, Missouri, to be filled; that he afterwards delivered the articles and collected a part of the purchase money. And neither ought it to require any argument to show that such acts constituted sales. The sales were completed when part payment and delivery was made. Therefore, beyond question, the sales were made by the defendant, and he falls within our statutory definition of a peddler, regardless of how other definitions of that vocation would place him.

The truth of defendant's claim that he was agent for a house in Kansas City may be conceded, and it will be of no benefit to him in this prosecution. The peddler, whether agent or principal, must have the peddler's license. *State v. Downing*, 22 Mo. App. 504; *Commonwealth v. Gardner*, 133 Pa. St. 284; *State v. Emert*, 103 Mo. 241.

There is no similarity whatever between this case and those decisions of the supreme court of the United States which hold that a state cannot tax the goods, or the occupation of selling them, which have been imported in packages from other states, on the ground that it would be exercising a power to regulate interstate commerce, a power which belongs to congress alone. Nor does this case involve the avocation of what is known as a drummer. A drummer is now well

understood to mean he who travels for a wholesale merchant, taking orders from retail dealers for goods to be shipped to them. And so the word is defined in Anderson's Law Dictionary. The business of a drummer, as thus understood, is not within the purview of the statute, nor does he fall within the scope of the evil which the statute was designed to regulate.

Though the question is not before us, and it is not necessary to express an opinion, yet it has been held that the regulation of a peddler who sells goods from other states is not a regulation of inter-state commerce, but belongs to the police power of the state. *Morrill v. State*, 38 Wis. 428; *Commonwealth v. Gardner*, 133 Pa. St. 284. It is said in this connection, in the latter case: "It is this matter of tracking a laboring man or woman into the house and laying siege to him or her by an unscrupulous and self-possessed stranger, who is after money, and has no delicate scruples about the manner in which he gets it, that has made the peddler a dread in the country and in the villages, and has led the law-makers in this and other states to put the business under strict regulations where it is not wholly forbidden."

The peddler, such as this defendant was shown to be, interferes with the legitimate trade of the local merchant, and, if he is to be allowed to do this free from all restraint of a license tax, it would be an unjust discrimination in his favor, to the great injury of the legitimate retail dealer. I think that the conviction of defendant was right, and that the judgment should, therefore, be affirmed.