CITY OF HUTCHINSON et al. v. BECKHAM et al.

(Circuit Court of Appeals, Eighth Circuit. October 27, 1902.)

No. 1,655.

1. EQUITY JURISDICTION—REMEDY AT LAW—BILL OF PEACE.

A court of equity has jurisdiction of a suit to enjoin the enforcement of an illegal city ordinance imposing a license tax, where, in addition to the illegality of the tax, it is shown that, if the city is permitted to proceed to enforce it by the remedies provided, complainant will be called upon to defend a multitude of criminal prosecutions, and will suffer irreparable injury in its business.

2. JURISDICTION OF FEDERAL COURTS—SUIT TO ENJOIN COLLECTION OF ILLEGAL TAX—AMOUNT IN CONTROVERSY.

A federal court has jurisdiction of a suit to enjoin the enforcement of an illegal license tax imposed on complainant's business by a city ordinance, and enforceable by the daily arrest of its employés, which it is alleged will result in serious interference with its business and a direct loss exceeding $2,000. In such case the amount involved for jurisdictional purposes is not alone the amount of the tax demanded, but the value of complainant's right to conduct its business without being subjected to such tax.

¶ 2. Jurisdiction of circuit courts, as determined by amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Shoe Co. v. Roper, 36 C. C. A. 459.

Appeal from the Circuit Court of the United States for the District of Kansas.

On September 5, 1901, James H. Beckham and James G. McKnight, the appellees, exhibited a bill of complaint against the city of Hutchinson, in the state of Kansas, et al., in the circuit court of the United States for the district of Kansas, wherein they averred, in substance, that they were engaged in business at Kansas City, in the state of Missouri, of which latter state they were residents and citizens, as "wholesalers and jobbers of groceries"; that their storerooms and offices were, and for a long time had been, located at Kansas City, Mo.; that they were engaged in interstate commerce, it having been their practice for a long time to sell groceries in many cities and towns in the state of Kansas and elsewhere, and particularly to retail grocers doing business in the city of Hutchinson, Kan., and in that vicinity; that in order to make a speedy delivery of goods sold in the latter city, after they were ordered, they had theretofore established and still continued to maintain a depot for the storage of groceries in original packages in the city of Hutchinson, which depot was in charge of an agent of the complainants, who represented them in said city and vicinity; that, by reason of its excellent railroad facilities and geographical situation, the city of Hutchinson was favorably situated for the location of a depot and warehouse for the distribution of the complainants' goods, and for that reason such a depot had been for a long time maintained by the complainants. The bill further averred, in substance, that the city of Hutchinson, acting by its mayor and councilmen, on June 25, 1900, had enacted a certain ordinance by the terms of which a license tax in the sum of $1,200 per annum was imposed upon the complainants as well as upon other jobbers who had goods stored in the city of Hutchinson for distribution to retail dealers, but who did not keep and maintain their principal office for the transaction of business in said city; that by the terms of said ordinance no persons engaged as jobbers of merchandise who did maintain their principal office in the city of Hutchinson, and did store goods therein for distribution to retail dealers, were required to pay said license tax, but were wholly exempt therefrom; that on August 1, 1900, the first section of said ordinance was amended so as to provide that licenses issued thereunder by the city should expire on the last day of June and the last day of December next after they were issued, and that the license fee should be at the rate of $1,200 per year, or $100 per month. It was further averred that, by the terms of said ordinance, nonresidents engaged in business as wholesalers and jobbers, who stored goods in said city of Hutchinson for distribution to retailers in Missouri or other states than Kansas, were not required to pay said license tax, but were exempt therefrom; that said ordinance applied only, and was intended to apply, so as to prevent the sale and speedy delivery of goods, to retail dealers in Kansas, by merchants and jobbers, like the complainants, who did business in other states than Kansas; and that by the enactment of said ordinance it was intended to hamper, burden, and prevent commercial transactions between citizens of the state of Kansas and citizens of other states, and to prevent the complainants from speedily delivering goods which they might sell to retail dealers residing in the city of Hutchinson and its vicinity. It was also averred that the aforesaid ordinance was enacted in pursuance of a conspiracy between merchants and jobbers who resided in Hutchinson and maintained their principal offices' there, the purpose of the conspiracy being to harass the complainants and others in a like situation, and to render their business in the city of Hutchinson unprofitable, and to compel them to discontinue said business by discriminating against them and in favor of persons engaged in the same line of trade who were residents of the city of Hutchinson and maintained their principal offices in said city. It was further averred that the complainants were liable to be proceeded against and compelled to pay a fine of not less than $10 nor more than $100, and to stand committed until the fine was paid, or to be confined in the city jail not less than 10 days nor more than 30 days, or to suffer both fine and imprisonment, in the discretion of the police judge, if they failed to comply with the provisions of said ordinance; that,

by reason of the complainants' failure to comply with the provisions of said ordinance, the defendant city had instituted criminal proceedings against their agents, and caused them to be imprisoned, and had threatened and were about to institute a great number of other like prosecutions against them, and to daily apprehend and imprison the complainants' agents until they complied with the provisions of the ordinance. In view of the premises, the complainants charged that the aforesaid ordinance was wholly illegal and void, and they prayed that the court would by its decree so declare, and perpetually enjoin the defendants from attempting to enforce the provisions thereof. The defendants below filed a general demurrer to the bill, which was overruled. Thereupon the defendants declined to plead further, and a final decree was entered in favor of the complainants below, granting the relief prayed for. From such decree the defendants prosecuted an appeal to this court.

J. W. Rose, for appellants.

C. F. Hutchings (L. W. Keplinger, on the brief), for appellees.

Before SANBORN and THAYER, Circuit Judges, and LOCHREN, District Judge.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The decree below is challenged in this court on two grounds only, the first and principal contention being that the lower court had no jurisdiction of the controversy because the amount involved was, as it is said, less than $2,000, exclusive of interest and costs. Incidentally it is also claimed that the complainants had an adequate remedy at law, and no right, for that reason, to appeal to a court of chancery for relief. Inasmuch as no attempt has been made in the argument to defend the validity of the ordinance, and as counsel for the city have based their right to a reversal wholly on the two grounds above stated, we shall assume that the ordinance is invalid, as the lower court held, and proceed to inquire whether the amount involved was sufficient to confer jurisdiction and whether the case was properly cognizable by a court of equity.

Concerning the last of these questions, which will be noticed first, it is quite sufficient to say that the complaint which was filed in the lower court may be appropriately termed a "bill of peace." Story, Eq. Jur. §§ 852, 853. It was filed to obtain a definite determination that the ordinance complained of was void, also to prevent harassing litigation, and to establish the complainants' right to transact business in the city of Hutchinson, as it had been doing for some years, without complying with the terms of the ordinance. One paragraph of the bill, as heretofore shown, alleged that the city authorities, for the purpose of enforcing compliance with the ordinance, had already caused the arrest of their agents, and were threatening to make further like arrests, and to institute numerous criminal prosecutions, and thereby prevent them from receiving, storing, and making speedy deliveries of goods, as had been their habit. Now, conceding that the validity of the ordinance might have been tried in any one of the criminal prosecutions thus brought by the city, yet, as the right of appeal existed from any judgment which might have been rendered therein, it is apparent that months, and possibly some years, might have elapsed before the invalidity of the ordinance would have been

definitely established, and that in the meantime the complainants might and probably would have been compelled to defend a multitude of suits, and submit to daily interruptions of their business, which would have proven to be very annoying, and probably disastrous. In such a case, the rule that a suit in equity will not lie to restrain the collection of an illegal tax, merely on the ground of its illegality, does not apply, because circumstances are alleged which show that if left to their remedy at law the complainants would probably be subjected to numerous prosecutions, besides sustaining great and irreparable loss in the prosecution of their business. When, in addition to the fact that an illegal tax has been imposed, it further appears that the persons or corporations upon whom it is imposed will be called upon to defend a multitude of suits, or that they will sustain great injury if the state or municipality is left free to enforce the tax by the usual remedies, courts of equity never hesitate to assume jurisdiction and grant injunctions against those who are seeking to enforce the collection of the tax if it appears to be clearly illegal. Dows v. City of Chicago, 11 Wall. 108, 110, 20 L. Ed. 65; Railway Co. v. Cheyenne, 113 U. S. 516, 525, 5 Sup. Ct. 601, 28 L. Ed. 1098; City of Ogden v. Armstrong, 168 U. S. 224, 239, 240, 18 Sup. Ct. 224, 42 L. Ed. 444; Heywood v. City of Buffalo, 14 N. Y. 534.

The other and broader objection to the jurisdiction, that the amount in controversy is inadequate to confer jurisdiction upon the federal court, is based upon the ground that as the bill was filed on August 29, 1900, and the tax from June 1, 1900, to December 31, 1900, was only $500, that was the sole sum in controversy. Counsel for the city say it was only claiming at the time $500, and that the right to collect that amount from the complainants was the only matter in controversy. We think, however, that this view of the case is too narrow and technical. The right which the complainants asserted was the right to transact their business in the city of Hutchinson as theretofore, without being subjected to the onerous and discriminating tax which the municipality had seen fit to impose. They averred that, if the city was left at liberty to enforce the tax in its own way by making daily arrests of its employés, they would eventually quit its service; that the complainants and all other nonresident merchants in their situation would be subjected to the cost and annoyance of defending repeated suits; that they would also be prevented from carrying on their business as they had theretofore done; that they would be compelled to transact business in competition with dealers residing in the city of Hutchinson who were not subject to the tax; and that in this way they would sustain damages in a sum exceeding $2,000. These allegations were admitted by the demurrer to be true if they were material allegations. From the complainants' standpoint, therefore,— and the case must be judged from their standpoint, and not exclusively from the standpoint of the city,—the amount involved in the litigation was not merely the license tax of $500 which accrued on June 1, 1900, but it was the total amount of their loss incident to the causes aforesaid, if the bill was not entertained, and if the city was left free to pursue its own course in enforcing the ordinance. Our attention has been invited to several cases which were brought to enjoin the collec-

tion of taxes that were alleged to be illegal, in which it was held that the amount in controversy for jurisdictional purposes was the amount of the tax (Transfer Co. v. Pendergrass, 16 C. C. A. 585, 70 Fed. 1; Walter v. Railroad Co., 147 U. S. 370, 13 Sup. Ct. 348, 37 L. Ed. 206; Railroad Co. v. Walker, 148 U. S. 391, 13 Sup. Ct. 650, 37 L. Ed. 494); but an examination of these cases shows that they are not analogous to the case at bar, in that it did not appear that the complainants would sustain any other direct damage save the amount of the tax, which, if paid under protest, they could recover in an action at law, if the tax was found to be illegal. The present case is distinguishable from the cases relied upon by the appellants, in that the tax involved is a license tax imposed by a municipality upon a business concern, the payment of which tax may be enforced by fining and imprisoning its employés and by daily arrests that will seriously interfere with the prosecution of complainants' business, and inflict a much greater direct loss than the amount of the tax. The suit at bar, in view of the allegations touching the effect upon the complainants' business, if the city is permitted to proceed with the enforcement of the ordinance in its own way, is in reality a bill to prevent the city from breaking up and destroying an established business under the guise of enforcing an illegal ordinance. The pecuniary loss which the complainants would sustain by such an interference with or destruction of their business may, as we think, be properly taken into account in determining the amount in controversy; and, as the bill alleges and the demurrer admits that the damages incident to such wrongful conduct on the part of the city will exceed $2,000, we are of opinion that the jurisdiction of the federal court to entertain the bill was rightfully upheld. The decree below is accordingly affirmed.