## THE STATE v. J. P. LOONEY, Appellant.

In Banc, January 24, 1907.*

1. INTERSTATE COMMERCE: Sale of Goods Located in Another State: License. A sale, in this State, of goods which are in another State at the time of the sale, is interstate commerce, and no license is or can be required for making such sale.

2. ————: Peddler: Goods Sold After Being Brought Into This State: Case Stated. An agent for a portrait company located at Chicago, Illinois, solicited from parties in Oregon county, Missouri, orders for portraits, and left with each purchaser of a portrait an agreement which stated: "We manufacture frames for harmonious effects........We do not compel you to take frames from us, but owing to the delicate nature of the work, all portraits are delivered in appropriate frames, which this ticket entitles you to select at wholesale prices. Elegant patterns that retail from $4 to $8, we furnish from $1.50 to $4.90, which is one-half to one-third the retail price." Thereafter, defendant, another agent of the company, appeared in Oregon county with the said portraits in frames, and delivered them to the parties who had ordered the same, and collected the price of the portraits; and, in most instances, the purchasers also took the frames and paid for them. No portraits or frames were sold except to parties who had previously given orders for portraits. *Held*, first, that, under the agreement, there was no contract for the purchase and sale of the frames. *Held, second*, that the sale of the frames did not come within the interstate commerce clause of the Federal Constitution, but was a Missouri contract. *Held, third*, that as to the frames defendant was a peddler under the Missouri statute (sec. 8861, R. S. 1899), and was required to have a license.

*NOTE.—Decided in Division Two, November 20, 1906. Transferred to Banc, and decided January 24, 1907. Certified to Reporter, October 30, 1908.

Transferred from St. Louis Court of Appeals.

AFFIRMED.

*Geo. M. Miley* for appellant.

Both the courts of our State and Federal courts have repeatedly held that where goods are sold by sample or by canvassing in any way and orders are taken which are to be filled by a future delivery of goods not then in the State, but which are shipped in later, and nothing is delivered at the time of sale, then the defendant is not a peddler, and is not required to have a license. State v. Emert, 103 Mo. 245; Hynes v. Briggs, 41 Fed. 469; Robbins v. Taxing District, 120 U. S. 489; Brown v. Houston, 114 U. S. 622; Welton v. State of Missouri, 91 U. S. 275.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

Under the repeated decisions of our courts, the defendant was a peddler, within the meaning of the law. The picture frames were made in Chicago; they were shown, priced and sold in Missouri. They were shipped from Chicago in separate packages from the pictures, and there had been no previous order for the frames. A mere printed statement on the order for the picture, to the effect, "We manufacture frames for harmonious effect," was not sufficient to evade the law. There had been no order for any frames, and defendant did not pretend that he was delivering them in compliance with any order. Defendant was, therefore, a peddler. State v. Emert, 103 Mo. 241; State v. Smithson, 106 Mo. 149; State v. Snoddy, 128 Mo. 523; Emert v. Missouri, 156 U. S. 296; Hynes v. Briggs, 41 Fed. 468.

## IN DIVISION TWO.

GANTT, J.—On February 21, 1905, the prosecuting attorney of Oregon county filed an information, duly verified by affidavit, charging the defendant with going from place to place in said county and selling goods, wares and merchandise, without having a peddler's license, or any other legal authority to sell. At the February term, 1905, of the circuit court of said county, the defendant was tried and convicted and his punishment assessed at a fine of ten dollars. Within due time and in proper form, he appealed to the St. Louis Court of Appeals, and that court has certified the cause to this court because a constitutional question is involved.

The State's evidence tended to prove that in the latter part of the year 1904, a man by the name of B. E. Irby, an agent of the Chicago Portrait Company, of Chicago, Ills., called upon the State's witnesses with samples and took from them orders to said Chicago Portrait Company, for unframed crayon portraits, to be delivered about January 10, 1905, and left with each purchaser a memorandum showing the agreement, which is as follows: "Chicago Portrait Company, capital stock, $500,000, 118-182 W. Jackson Boulevard, Chicago. Portraits made in oil, crayon, pastel, sepia, pearl and bromode. We manufacture frames for harmonious effects. On or about January 10, 1905, we agree to deliver to Mr. Will Minix a finely finished unframed crayon portrait, 16x20, like sample. The purchaser agrees to pay $3.96 for the portrait when delivered. We do not compel you to take frames from us, but owing to the delicate nature of the work, all portraits are delivered in appropriate frames, which this ticket entitles you to select at wholesale prices. Elegant patterns that retail from $4.00 to $8.00, we furnish from $1.50 to $4.90, which is one half to one-third the retail

price. Please remember the date of the delivery and have the money ready, as our delivery man can make but one call to collect charges for same. Please be at home or leave money with nearest neighbor.

"(Signed.)                           B. E. IRBY,

"Advertising Solicitor Chicago
Portrait Company.

"THIS ORDER CANNOT BE COUNTERMANDED."

Afterwards, in February, 1905, the defendant, another agent of the Chicago Portrait Company, appeared in Oregon county with the said portraits in frames and delivered them to the parties who had ordered the same, and collected the price of the portraits, and, in most cases, the purchasers also took the frames and paid for them. The portraits and frames were made in Chicago, Ills., and were shipped from that city to the defendant in Missouri, and he made the delivery and collected therefor. In some cases the purchasers declined to take the frames and received only the portraits and paid for them. No pictures and no frames were delivered or collected for by the defendant except to or for persons from whom these orders for portraits had previously been taken.

At the close of the State's case the defendant demurred to the evidence, first, because the facts disclosed were insufficient to convict; and second, because the facts disclose that under the interstate commerce clause of the Federal Constitution, section 8, article 1, the defendant is not required to have a license, and a Federal question is involved. The demurrer to the evidence was overruled and the defendant duly excepted.

Thereupon the defendant testified in his own behalf that he was engaged in the business of delivering pictures and frames for the Chicago Portrait Company; that orders for the goods in question had been previously taken by a solicitor in Oregon county, Mis-

State v. Looney.

souri, and sent in to the Portrait Company at Chicago, Ills., to be filled; that the said portraits and frames were shipped from the house in Chicago to the defendant in this State to be delivered by him, and it was his duty to collect for them, all of which he did; that he had not delivered or collected for, nor tried to deliver or collect for, any of these goods to or from any person or persons except to such as had previously given an order therefor to a solicitor for the company. This in substance was all the evidence. The court gave the jury the following instructions:

"1. The court instructs the jury: If you believe from the evidence beyond a reasonable doubt that this defendant, at any time within one year before February 21, 1905, in Oregon county, Missouri, did deal as a peddler and did engage in the selling of goods, wares and merchandise, to-wit, picture frames, by going from place to place to sell the same without having a license as a peddler, you should find defendant guilty and assess his punishment at a fine not less than ten dollars or more than one hundred dollars.

"2. If you believe from the evidence that the picture frames in question were sold by an agent of a Chicago firm who took the order for such frames and sent such order to the firm in Chicago for its approval, and that such firm accepted such order and shipped such goods to this defendant as its agent, and that he as such agent delivered such goods and collected therefor, then he would not be a peddler within the meaning of the law, and you should acquit the defendant."

As already said, the jury under the instructions found the defendant guilty.

I. It is plain from the instructions given by the court that the circuit court was of the opinion that the transactions in regard to the portraits themselves constituted interstate commerce, and that our peddlers'

act in Missouri did not and could not require the defendant to take out a license for delivering the portraits and receiving the purchase price therefor. Nowhere has the law been better stated than by Judge MACFARLANE, in State v. Emert, 103 Mo. l. c. 245, wherein he says: "By force of these decisions of the court having the highest judicial authority over the subject, it is settled that the sale of goods which are in another State at the time of the sale, for the purpose of introducing them into the State in which the regulation is made, is interstate commerce; that a tax on the sale of such goods, before they are brought into the State, is a tax on interstate commerce itself; that the imposition of a license upon the person making such sale is, in its effect, a tax upon the goods themselves; that a State cannot tax goods beyond its jurisdiction. [Hynes v. Briggs, 41 Fed. 469, citing Robbins v. Taxing District, 120 U. S. 489; Brown v. Houston, 114 U. S. 622; Woodruff v. Parham, 8 Wall. 123; Cook v. Pennsylvania, 97 U. S. 566; Welton v. State, 91 U. S. 275.]" But the circuit court was of the opinion that the transaction in regard to the sale by the defendant of the frames for the said pictures did not fall with the interstate commerce clause of the Constitution of the United States, and submitted to the jury whether the defendant dealt as a peddler in selling the said picture frames by going from place to place in said county to sell the same without having a license as a peddler. Whereas, the defendant insists that, inasmuch as it was agreed between the portrait company and the purchasers of the portaits at the time they ordered the same, that the portraits should be delivered in appropriate frames, which frames the purchaser could take at the regular wholesale prices if he desired to do so at the time of the delivery, and did do so, the delivery of the frames and the receipt of the prices therefor were parts of one and the same

contract which was made by the agent who took the order while the goods were yet in the State of Illinois, and that the delivery of the frames was as much a part of the full performance of that contract as was the delivery of the portraits. An examination of the memorandum given to each purchaser by the soliciting agent Irby will demonstrate, we think, that there was no contract of purchase and sale of the portrait frames when the contracts for the portraits were made. The only agreement on the part of the purchaser was to pay a specified price for the portrait when delivered. The most that can be said was that the portrait company agreed to deliver the portraits in appropriate frames, which the memorandum entitled the purchaser to select at wholesale prices, but no frame was ordered and no price of the frame agreed upon, and the purchaser of the portrait was under no obligation to purchase the frame of the portrait company of the defendant. The uncontradicted evidence on both sides establish that at the time named in the information the defendant appeared in Oregon county with the portraits already framed and urged the State's witnesses who had ordered the portraits to also buy and pay for the frames, which in several instances they did. The sale, exhibition and purchase of these frames all occurred in Oregon county, Missouri, and long after the contract for the portraits had been made and entered into. In view of these facts, we are compelled to hold that the sale of these frames was a distinct transaction from that of the order and purchase of the portraits, and that such sales of the frames did not constitute interstate commerce. We are cited by the learned counsel for the defendant on this point to Caldwell v. North Carolina, 187 U. S. 622, but an examination of the facts found in the special verdict upon which the decision of the Supreme Court of the United States is predicated in that case show that

in that case not only the pictures were ordered by citizens of Greensborough, N. C., of the portrait company in Chicago, but the frames also; that being the case, the transaction was one of interstate commerce. In that case the frames were ordered along with the portraits. In this case the portraits alone were ordered, and thus the facts themselves distinguish the two cases. We think it is too clear for discussion that the portrait company shipped the picture frames into this State to the defendant, its agent, without having any valid contract with the several purchasers of the pictures, and that the contract and sale by the defendant, of the frames to the several purchasers, was a Missouri contract and not one falling under the interstate commerce clause of the Constitution. [State v. Emert, 103 Mo. 241; State v. Smithson, 106 Mo. 149; Hynes v. Briggs, 41 Fed. l. c. 470.] Accordingly, it must be ruled that the defendant was not exempt from taking out a license as a peddler on the ground that he was engaged in interstate commerce.

II. But it still remains to be determined whether, conceding all that was shown by the State, the defendant was a peddler under the laws of this State, and as such required to take out a license. Section 8861, Revised Statutes 1899, defines who are peddlers in this State: "Whoever shall deal in the selling of patents, patent rights, patent or other medicine, lightning rods, goods, wares or merchandise, except pianos, organs, sewing machines, books, charts, maps, and stationery, agricultural and horticultural products, including milk, butter, eggs and cheese, by going about from place to place to sell the same, is declared to be a peddler." By section 8862 it is provided: "No person shall deal as a peddler without a license," and by section 8867 the rates of tax on peddlers' licenses are fixed. By section 8868, "Every person who shall be found dealing as a peddler contrary to the provisions

of'' chapter 140, "shall be deemed guilty of a misdemeanor, and, upon conviction, shall be fined not less than ten dollars nor more than one hundred dollars.''

Statutes regulating the occupation of itinerant peddlers and requiring them to obtain licenses are very ancient. Our Missouri statute is very similar to the act of 50 Geo. III, chap. 41. The purpose of that act was explained by Baron GRAHAM in Attorney-General v. Tongue, 12 Price 51, as follows: ''The object of the Legislature, in passing the act upon which this information is founded, was to protect, on the one hand, fair traders, particularly established shopkeepers, resident permanently in towns or other places and paying rent and taxes there for local privileges, from the mischiefs of being undersold by itinerant persons, to their injury, and on the other hand, to guard the public from the impositions practiced by such persons in the course of their dealings, who, having no known residence, carry on a trade by means of vending goods conveyed from place to place by horse or cart.''
In Com. v. Ober, 12 Cush. 493, Chief Justice SHAW said: ''The leading primary idea of a hawker and peddler is that of an itinerant or traveling trader who carries goods about in order to sell them, and who actually sells them to purchasers, in contradistinction to a trader who has goods for sale and sells them in a fixed place of business. . . . Our statute goes further, and not only proscribes actual hawkers and peddlers, whose employment is that of traveling traders, and thus seems to refer to a *business or habitual* occupation, but it extends to all persons doing the acts proscribed.'' And by reference to section 8861, Revised Statutes 1899, it will be observed that our statute denominates "whoever shall deal in the selling of patents, etc., goods, wares and merchandise, except pianos, organs, sewing machines, books, charts, maps and stationery, agricultural and horticultural products,

including milk, butter, eggs and cheese, by going about from place to place to sell the same, as a peddler.'' [State v. Hoffman, 50 Mo. App. 585; City of Moberly v. Hoover, 93 Mo. App. 663.] In State v. Emert, 103 Mo. l. c. 247, it was said by this court: ''The defendant was engaged in going from place to place selling and trying to sell sewing machines in Montgomery county in this State, and had been so engaged for some years. He carried the machines with him in a wagon, and on making a sale delivered those sold to the purchaser. .He not only solicited orders but was making sales and delivering the propery sold. These acts bring him clearly within the statutory definition of a peddler.'' In support of his contention that the evidence in this case does not constitute the defendant a peddler within the meaning of our statute, counsel for the defendant cites us to two recent decisions of the Supreme Court of South Carolina, State v. Coop, 30 S. E. 609, and City of Laurens v. Elmore, 33 S. E. 560. In State v. Coop it was held that one who delivers a portrait already sold in a frame with option to the purchaser to buy the frame as set out in the contract of sale of the portrait, is not a hawker and peddler under the code of criminal procedure of that State, section 294, in selling the frame to the purchaser of the portrait. That decision is based upon a prior decision of the same court, in State v. Moorehead, 42 S. C. 211. In the last-mentioned case, it was said by the court, after quoting the first section of the act of 1893, entitled, ''An act to amend the law as to hawkers and peddlers,'' ''There is nothing in the act to indicate any intention on the part of the Legislature to give any new definition to the words 'hawkers and peddlers,' but the sole purpose was to regulate the granting of licenses to persons falling within the well-recognized definition of those words.'' It appears in

214 Sup.—15

the statement of the facts of that case that "the defendant has, since the 20th of December, 1893, to-wit, on the 29th day of March, 1894, sold a sewing machine from his wagon, while traveling from place to place, said sale having been made to one John Smith, in Richland county. . . . The defendant, on or prior to said 29th of March, 1894, was employed by said company [Singer Manufacturing Company] and by it furnished with a wagon in order to travel about from place to place in Richland county and elsewhere, for the purpose of selling sewing machines, parts, and attachments, and for the purpose of soliciting patronage for the business and store of said company at Columbia, South Carolina." Entertaining the highest respect for that court and the distinguished jurist who wrote the majority opinion in the Moorehead case, we are nevertheless of the opinion that it is in conflict with the views expressed by this court in State v. Emert, 103 Mo. 247, and the decision of the Supreme Court of the United States in the same case, Emert v. Missouri, 156 U. S. 296, as to what constitutes a peddler under our laws. State v. Coop, supra, involves the identical memorandum that we have before us in this case. An agent of the same Chicago Portrait Company was tried and convicted before a magistrate for selling picture frames as a peddler without a license, and the circuit court dismissed the defendant's appeal, and the Supreme Court of that State reversed the decision of the circuit court and held that the defendant, in circumstances in all respects similar to those appearing in this record, was not a peddler.

In that case JONES, J., dissented, and said: "The defendant, under the facts in this case, so far as concerned the picture frames, was a hawker or peddler within section 294 of the Criminal Statutes of 1893. The sale of the picture frames was not exceptional, or occasional merely, but was within the general scope

and purpose of defendant's business. It was a part of defendant's avocation to sell a picture frame to any and every customer who had given an order for a portrait, therefore, the rule in State v. Moorehead, 42 S. C. 211, and Alexander v. Greenville Co., 49 S. C. 527, has no application here. These picture frames were not sold by sample, or pursuant to an order solicited, but were carried about from place to place within this State, and sold, or offered for sale, for a price separate and distinct from the price of the portrait ordered. The fact that the frame was convenient for the use, protection, and enjoyment of the portrait can make no sort of difference in determining the question whether 'picture frames' come within the definition of goods, wares, and merchandise, and whether the sale of such goods by an itinerant, carrying them from place to place for such purpose, constitutes hawking and peddling.'' Citing, among other cases, State v. Emert, 103 Mo. 241. In City of Laurens v. Elmore, 33 S. E. 560, an agent of the same portrait company was prosecuted for violation of the ordinance of said city and the same contract or memorandum of the Chicago Portrait Company was in issue, and the majority of the court held that the city could not impose a special license on the agent and that the ordinance was in conflict with the interstate commerce clause of the Constitution. Judge Jones again dissented and again pointed out the fact that the record disclosed that the defendant delivered the enlarged pictures or photographs pursuant to orders theretofore given, and that he sold picture frames only to persons who had given such orders for enlarged pictures; said the learned judge: ''Here, then, is the distinct fact that the picture frames were not sold and delivered pursuant to any interstate order or contract therefor. I admit that, if the picture frames had been sold and delivered pursuant to the contract of delivery of the

enlarged pictures, such sales and delivery would con-
stitute interstate commerce, and would come under the
principle announced in reference to the delivery of
the enlarged pictures.'' Accordingly, he dissented
from the opinion of the majority. In the case at bar,
the evidence shows beyond all controversy that the
defendant was a collecting agent for the Chicago Por-
trait Company, to deliver enlarged pictures which had
been ordered by residents of Oregon county from the
Chicago Portrait Company. It also affirmatively ap-
pears that these residents of Oregon county, in giving
their orders for these pictures, did not give any order
or orders for frames for the same, and that about Feb-
ruary, 1905, the defendant, as agent for the said Por-
trait Company, appeared in Oregon county with the
portraits and also frames for each of the said pictures,
and that he went from house to house and delivered
the pictures, and at each of some five or six different
farms, offered for sale to the persons who had ordered
these pictures a picture frame for each of said por-
traits for a price separate and distinct from the price
of the portrait ordered; that in all except one or two
cases the parties for whom the portraits had been made
purchased picture frames of the defendant and received
them and paid him therefor. The question arises
whether the court erred in submitting to the jury, as
it did, whether the defendant dealt as a peddler and
engaged in selling the pictures aforesaid by going
from place to place to sell the same without having
a license as a peddler, and in our opinion there was
sufficient evidence to justify the court in so instructing
the jury, and the jury in finding that the defendant was
guilty of dealing as a peddler in the selling of the said
picture frames without having a license so to do.

It cannot be said that these sales by the defendant
were sporadic or accidental; on the contrary, they ap-

pear to have been a large part of the business of the defendant.

The judgment of the circuit court must therefore be and it is affirmed.

*Burgess, P. J.,* and *Fox, J.,* concur.

## IN BANC.

PER CURIAM:—This cause having been transferred to the Court in Banc on the motion of the defendant and having been reargued and considered by the whole court, the opinion of GANTT, C. J., in Division, is adopted and in accordance therewith the judgment of the circuit court is affirmed; *Burgess, Valliant, Fox, Lamm, Graves* and *Woodson, JJ.,* concurring therein.

# CASES DETERMINED

IN THE

# SUPREME COURT

OF THE

## STATE OF MISSOURI

AT THE

### OCTOBER TERM, 1908.