## INJUNCTION PENDING DETERMINATION OF A CONSTITUTIONAL QUESTION.

Common Pleas Court of Franklin County.

THE SMITH AGRICULTURAL CHEMICAL COMPANY v. CALVERT ET AL. *

Decided, July 13, 1908.

*Injunction—Preliminary Order will be Granted against Enforcement of a Statute, When—Fertilizers and Regulation of the Manufacture and Sale of—Sections 4446a to 4446i and 7002.*

Where grave questions of law are involved, including the constitutionality of the statute under which the defendants claim to be acting, and the property rights of the plaintiff will be jeopardized by enforcement of the statute, while comparatively slight injury will result from delay in its enforcement, a preliminary injunction will be granted to preserve the *status quo* until the court has been given opportunity to properly consider and determine the questions in issue.

*Addison, Sinks & Babcock,* for plaintiff.
*O. E. Harrison, S. W. Bennett* and *B. D. Higgins,* contra.

ROGERS, J.

The case stands on the plaintiff's application for a temporary injunction. As appears from the amended petition, the plaintiff is and has for a long time been engaged in importing materials for, and manufacturing and selling fertilizer throughout this and other states, and has invested large sums of money in its plant, and has built up an extensive trade with large moneyed interests invested therein. The defendants threaten to enforce the statutes regulating the manufacture and sale of commercial fertilizer against the plaintiff if it does not comply therewith, and the enforcement of these statutes plaintiff claims will result in the destruction of its property rights and ruination of its

*Proceedings below affirmed by the Supreme Court without report, *State, ex rel,* v. *Smith Agricultural Chemical Co.,* 79 Ohio State; for previous decision in the Common Pleas, see 7 N. P.—N. S., 103.

business. And these statutes, as well as the statutes under which defendants claim to hold their respective positions, it is charged are void as being in contravention of the state and federal constitutions. Wherefore it prays for a permanent injunction prohibiting such enforcement of the fertilizer laws against it, and of doing acts under said laws in impairment of plaintiff's property rights, including the publication of reports or statements reflecting upon the plaintiff's right to do business, or interfering with the conduct of its business; and it also prays for a temporary injunction to preserve the *status quo* until the question of right between the parties can be decided on final hearing.

A large number of affidavits by the respective parties have been filed for and against the allowance of such temporary injunction. A large part of the evidence contained therein is entirely foreign to the subject before the court on this hearing. In some particulars the amended petition is denied by the defendants, but so far as the enforcement of the fertilizer statutes is concerned the amended petition practically remains admitted.

The statutes concerning the regulation of the fertilizer business in Ohio are contained in Sections 4446a to 4446i, and Section 702, Revised Statutes. The statutes require, among other things, that, before any sale of fertilizer, a certificate shall be affixed on the outside of each package stating the number of pounds, the name or trade-mark, the name of the manufacturer, the place of manufacture, and chemical analysis of certain ingredients, and that a certified copy of such certificate shall be filed, and a sealed glass jar containing a sample of not less than one pound of fertilizer shall be deposited with the secretary of the Ohio State Board of Agriculture, with an affidavit that such jars contains a fair sample; that the manufacturer, or importer or agent shall pay annually, on May first, a license of $20 on each brand to said secretary, "for the privilege of selling or offering for sale within the state"; that all analyses of fertilizer shall be made annually by or under direction of said secretary, and paid out of funds derived from license fees; that said secretary shall publish annually a report of such analyses, and moneys received and expended therefor, and the surplus shall be placed to the credit of the agricultural fund; that any

person offering or exposing for sale, or selling fertilizer without complying with Sections 4446a to 4446c, or permitting an analysis to be attached to any package stating a larger percentage of the constituents than it really contains, shall be subject to a penalty of not *less* than $200 for the first, and not *less* than $500 for every subsequent offense, to be recovered by civil action brought by said secretary in the name of the state, and the penalties recovered shall be paid into the state treasury to the credit of the general revenue fund; that said secretary, or any person by him deputized, is empowered to select from any package of fertilizer exposed for sale, not to exceed two pounds, for the purpose of analysis and comparison with the certificate and the samples deposited with said secretary. Besides there is a criminal statute, Section 7002, providing a punishment for non-compliance with first three of the above named sections.

Many grave and difficult constitutional questions concerning the validity of the present fertilizer statutes are raised by the amended petition. Some of them are:

1. Whether the prerequisite requirement that the license fee of $20, annually, on each brand, shall be paid by the manufacturer, etc., "for the privilege of selling or offering for sale within the state," is or is not violative of Section 8 of Article I of the Constitution of the United States conferring upon Congress power to regulate commerce among the several states.

2. Whether the power vested in the secretary, or any person deputized by him, to select from any package exposed for sale a quantity not exceeding two pounds, for analysis and comparison with the sample deposited with the secretary, is or is not an arbitrary and discriminatory exercise of police power amounting to a taking of property without due process of law, and in the impairment of property rights protected by the Fourteenth Amendment of the United States.

3. Whether the exercise of the power last named is or is not a clear violation of the Bill of Rights, as well of the Constitution of Ohio as of the United States, declaring the right of property to be inviolate and prohibiting the taking of such property for public use without just compensation; for clearly if it can not be taken for public use without compensation, it can not be

taken for private use, nor could it be taken were there no con-
stitutional provision on the subject. See *Reese* v. *Treasurer of
Wood County*, 8 O. S., 333, 345; *Shaver* v. *Starrett*, 4 O. S.,
494, 498.

4. Whether the said license fee is or is not a tax, levied in
contravention of the Ohio Constitution.

5. Whether the fertilizer law as it now exists, and which
had no force and was void, in that it sought to confer the exercise
of public functions upon the secretary of the former board, which
has been held by this court to be without authority in the prem-
ises, is or is not revived by the new act of May 1st, 1908, creat-
ing the present board, so that what was an inoperative and void
statute as to the former secretary is made operative and valid
as to the present secretary. The act of May 1st, 1908, so far
as conferring power and imposing duties on the secretary with
regard to the present fertilizer law is a complete blank. While
it confers powers on the new board, it confers none on the secre-
tary; and whether it can be said that the present fertilizer stat-
ute which was void and had no force, because it conferred pow-
ers on a person, not a state officer, to perform sovereign function,
now becomes operative by the appointment, under a new legisla-
tive act, of a secretary, who was not contemplated by the pres-
ent fertilizer law, is to my mind a novel and intricate question.

These are some of the problems to be solved, before the present
secretary can safely attempt enforcement of the fertilizer stat-
utes. Notwithstanding the serious legal obstacles confronting
defendants in the proper enforcement of the fertilizer statutes,
vexatious litigation and a multiplicity of suits, both civil, crimi-
nal and *quasi* criminal are threatened by them as against the
plaintiff, and its agents, which are liable to cause immediate,
certain and great pecuniary loss, expense and hardships to
plaintiff, and result in irreparable injury. And the object of
the preliminary injunction applied for is to prohibit the inva-
sion by defendants of plaintiff's rights of property by the en-
forcement of the alleged unconstitutional law, until its right
to a permanent injunction may be fully heard and determined
by the court. That a permanent injunction will be decreed to
prohibit the invasion of such rights is too well settled to need

authorities in support of the proposition. Among some of them however, are: *Davis & Farnum Manufacturing Co.* v. *Los Angeles,* 189 U. S., 207, 217; *Dobbins* v. *Los Angeles,* 195 U. S., 223, 241; *City of Hutchinson* v. *Beckham,* 118 Fed., 399, 402; *Greenwich Insurance Company* v. *Carroll,* 125 Fed., 121, 126; *Camden Interstate Railway Company* v. *Catlettsburg,* 129 Fed., 421, 430.

The question remaining is as to whether the court is authorized to grant a preliminary injunction in the case made, even where the questions involved are those of law, namely, the constitutionality of the legislative acts, or any of them, challenged by the plaintiff in its amended petition. A preliminary injunction is a provisional remedy, and, as far as possible, it is allowed or disallowed, as the case may be, without the intention on the part of the court of forecasting what may be the final decree on full hearing. And on the question of allowing such an injunction the relative rights of the parties, and the injury to each by its allowance or disallowance are proper matters for consideration. The rights and duties of the defendants, and especially the secretary of the board, are to enforce the fertilizer laws, if constitutional, by requiring the payment of license fees, the deposit of samples of the various brands of fertilizer, the inspection and selection of samples of fertilizer on sale, the publications of analyses of fertilizer, etc., the recovery by suit of license fees and penalties for non-compliance with the law, and other incidental duties imposed by statute. These rights and duties, if not enforced as to the plaintiff until a full hearing may be had, will entail no loss to the defendants other than what may be compensated in for money, and may be protected by proper bond. Whereas, if the defendants be permitted to enforce the fertilizer statutes against the plaintiff to the extent warranted by their letter (and the court must presume that the defendants will perform their respective duties in the premises), such enforcement is liable to result in a complete wrecking of plaintiff's business, and heavy loss of its property. Whether the plaintiff will or will not put in a spurious article of merchandise on the market—a matter seriously disputed by the plaintiff—and thereby perpetrate frauds upon customers,

they have their remedies against the plaintiff, whether the fertilizer law is or is not enforced by the defendants. The presumption is that the plaintiff will not commit such a fraud; and, besides, the publicity already given these matters in dispute and the competition among dealers ought to prevent any serious fraud being practiced upon customers. Furthermore the prevention by a preliminary injunction of the enforcement by the defendants as against the plaintiff of the fertilizer statutes in no ways interferes with the rights and duties of the board and its members in all other matters lawfully imposed upon them. And unless other manufacturers and dealers in fertilizer see fit to prevent the enforcement of these statutes the board may at its peril enforce the statutes as against them.

The situation, therefore, presents a question of the relative convenience or inconvenience to these parties by the allowance or disallowance of a temporary injunction, and I am satisfied that the discretion of the court should be exercised in favor of allowing a temporary injunction, if it can be allowed when purely questions of law are involved, and especially constitutional questions. It is the law that whenever the questions of law or fact to be ultimately determined in an equity suit are grave and difficult, a preliminary injunction to maintain the *status quo* may properly issue, especially where the injury to the moving party will be immediate, certain and great if it is denied, while the loss or injury to the opposing party will be comparatively small and insignificant if granted. See *Newton* v. *Lewis*, 79 Fed., 715; *D. & R. G. R. Co.* v. *United States*, 124 Fed., 156; *Harriman* v. *Northern Securities Company*, 132 Fed., 464.

If a case involving grave and intricate questions of law entitles the plaintiff, in a proper case, to a preliminary injunction, I am unable to see why the fact that they may be constitutional questions should make any difference in the rule. Although the constitutionality or unconstitutionality of a legislative act is a pure question of law, I am of opinion that, in a proper case, where such questions of law only are to be determined by court, it will grant a preliminary injunction to preserve the *status quo,* in order that the court may ultimately determine the rights of

the parties. Frequent examples of such injunctions may be found in street assessments and tax cases, and many other classes of cases might be cited. In fact, the only feasible way to settle like questions to those at bar is by first allowing a temporary injunction, in order to give the court time to deliberate upon the intricate legal questions involved and arrive at a just conclusion. And this is especially so, where by staying the hand of the defendants comparatively small damage will be done, whereas by allowing the defendants, without limit, to pursue the plaintiff under the statutes, irreparable injury would result, causing wreck and ruin of property rights.

I have gone into the questions raised by the plaintiff's pleading far enough to convince me that the defendants' rights in the premises are not free from doubt, in several particulars heretofore pointed out. On the contrary, the case made by the amended petition presents strong claims for equitable interference, and the plaintiff's course in seeking an injunction is highly proper to test the question involved. As was said in the opinion in *The City of Hutchinson* v. *Beckham, supra,* "the complaint * * * may be appropriately termed 'a bill of peace.'" It is filed to obtain a definite determination that the fertilizer statutes complained of are void; also to prevent harassing litigation and to establish the plaintiffs' rights to transact its business without complying with the alleged void statutes. While the court will not undertake to determine the ultimate rights of the parties, it is sufficient to say that a fair question is raised as to the existence of the right of the plaintiff to the injunction demanded, and it makes a case of probable right justifying the preservation of the plaintiffs' property in *quo status* during the pendency of the statute, and until the case can be deliberately heard and finally determined upon the issues. The right of the defendants, and especially the secretary, under the fertilizer statutes, to take the plaintiffs' property without compensation, and to compel the payment annually of a license fee for the privilege of selling, where plaintiff is doing a local and interstate business, has the appearance of an unlawful exaction from plaintiff which it at least should have the right to have determined before its property rights are seriously

impaired by non-compliance with the statutes. The court recognizes the right of a state to enforce inspection laws, to charge fees therefor, and to impose penalties under the same; but I am unable to see without further enlightment, in such a case as this, how the state can take property or can abridge the privilege of selling without interference with the due process clause and the interstate commerce clause respectively of the United States Constitution, as well as with the Constitution of the state. The case of *Southern Express Company* v. *Mayor, etc., of Emsley,* 116 Fed., 756, is instructive on the subject of the state's interference with interstate business, and involves the principles in case at bar.

The matter remaining is as to the extent of the preliminary injunction. The court is of the opinion that a preliminary injunction should be allowed restraining and enjoining the defendants and each of them from collecting or seizing any of the goods manufactured, owned or sold by the plaintiff, or from entering upon the premises where same are stored, from drawing any samples therefrom, from requiring or compelling or attempting to require or compel the plaintiff to pay said license fees for said brands, from preparing, publishing, or circulating any bulletin, pamphlet, or report, or statement, under or by virtue of their claim of authority as members, or secretary of the said state board of agriculture, as or such board, reflecting either directly or indirectly upon or injuriously impairing the plaintiffs' right to prosecute or conduct its business, and from in any way interfering with the plaintiffs' said business on account of its refusal to pay said license fees or otherwise comply with said acts of the Legislature, and it is so ordered. Exception by the defendants.