### JEWEL TEA CO. v. LEE'S SUMMIT, MO., et al.

(District Court, W. D. Missouri, W. D. July 20, 1912.)

No. 3,694.

1. COURTS (§ 328*)—FEDERAL COURTS—JURISDICTION—AMOUNT IN CONTROVERSY.

Where complainant sued to enjoin the enforcement of a municipal ordinance, alleged to impose a license tax on interstate commerce, federal jurisdiction was determined by the value of the right to be protected or the extent of the injury to be prevented, and was therefore not avoided by reason of the fact that the license tax sought to be avoided amounted to less than $2,000.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 890–896; Dec. Dig. § 328.*

Jurisdiction of Circuit Courts as determined by the amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent-Stribling Shoe Co. v. Roper, 36 C. C. A. 459; O. J. Lewis Mercantile Co. v. Klepner, 100 C. C. A. 288.]

2. COMMERCE (§ 41*)—INTERSTATE COMMERCE—MUNICIPAL ORDINANCE—LICENSE TAX.

Complainant, a merchant in Illinois, employed an agent who solicited orders for merchandise in defendant city in Missouri, reporting the orders to complainant by mail. The merchandise so ordered was put up in packages, all of which were shipped in one or more cases to the agent who alone had authority to receive the goods from the carrier, and who then delivered the packages to the various customers and collected and remitted the price. *Held* that such transaction constituted interstate commerce notwithstanding each package was not marked with the customer's name or otherwise identified as belonging to the particular customer to whom it was delivered, and hence was not subject to an ordinance imposing a license tax on venders of teas, coffees and other kinds of merchandise not otherwise licensed, etc.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 30, 31; Dec. Dig. § 41.*]

3. COURTS (§ 508*)—FEDERAL JURISDICTION—CRIMINAL PROCEEDINGS—INJUNCTION.

Under Rev. St. § 720 (U. S. Comp. St. 1901, p. 581), providing that injunctions shall not be granted by federal courts to stay proceedings in a

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

state court, except where such injunction may be authorized by any law relating to proceedings in bankruptcy, pending prosecutions in the state court for violation of a municipal ordinance licensing vendors, may not be enjoined by a federal court on the ground that the ordinance is inapplicable to complainant's transactions constituting interstate commerce, though the commencement of further prosecutions may be enjoined.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1418-1423, 1425-1430; Dec. Dig. § 508.*

Federal courts enjoining proceedings in state courts. see notes to Garner v. Second Nat. Bank of Providence, 16 C. C. A. 90; Central Trust Co. of New York v. Grantham, 27 C. C. A. 575; Copeland v. Bruning. 63 C. C. A. 437.]

In Equity. Suit by the Jewel Tea Company against Lee's Summit, Mo., and others to enjoin the enforcement of a municipal ordinance. On final hearing. Decree for complainant.

See, also, 189 Fed. 280.

Cowherd, Ingraham, Durham & Morse, of Kansas City, Mo., for complainant.

E. S. Bennett of Lee's Summit, Mo., and Pence & Sanford, of Kansas City, Mo., for defendants.

VAN VALKENBURGH, District Judge. This is a final hearing on a bill to restrain the defendants from enforcing an ordinance of the defendant municipal corporation entitled "An ordinance to license and regulate the different classes of business, employment, occupation, agencies, amusements, etc., in the city of Lee's Summit, Missouri," approved September 6, 1910. Lee's Summit is a municipal corporation under the laws of the state of Missouri, located in Jackson county, Mo. Defendant Rittenhouse is its mayor, and the defendant Brown its marshal. The complainant corporation is a citizen of the state of Illinois and a resident of the city of Chicago. This court acquires jurisdiction by reason of diversity of citizenship.

Sections 1, 2, 3, 4, and 5 of the ordinance in question are as follows:

"1. No person, firm, company, partnership, corporation or association shall, in the city of Lee's Summit, engage in, conduct, carry on. or exercise any of the following classes of business, employments. occupations, agencies, exhibitions, shows or amusements, without having first obtained a license therefor, from the said city of Lee's Summit, and pay a charge or fee for such license as set forth in the schedule following: * * * Vendors of teas. coffees, bread, candies, soda pop, or any kind of merchandise whatever, not otherwise licensed by this ordinance, selling at retail from wagon or other vehicle, one dollar per day for each such wagon or vehicle and one dollar per day where same is sold by solicitor taking orders for future delivery.

"2. It shall be the duty of the city clerk to issue all such licenses provided under this ordinance, for which he shall receive a fee of fifty cents on each valid license to be paid from the general revenues; provided that in all cases where the license is issued for a less period than one year the applicant shall pay the clerk's fee in addition to the license tax for the period covered.

"3. All licenses shall be issued to the first day of October of each year, and in computing time a fractional part of a month shall be counted a month; Provided that license for dramshops shall be issued to July 4th and January 4th of each year.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"4. Any person or persons, firm or copartnership, corporation, or association or any agent, manager or employé of any such person, firm, copartnership, corporation or association doing business in violation of this ordinance shall be subject to pay a fine of not less than five dollars, nor more than one hundred dollars.

"5. This ordinance shall take effect and be in force from and after the first day of October, 1910."

On August 7, 1911, a temporary injunction was granted by Judge McPherson then sitting, and the substantial facts appearing are recited in his opinion then filed. (C. C.) 189 Fed. 280. In the bill the ordinance is charged to be invalid as a burden and tax upon interstate commerce, in violation of clause 3, § 8, art. 1, of the Constitution of the United States, and of section 1, art. 14, of the amendments thereto. It is alleged that a number of criminal actions have been brought against the agents of complainant to enforce penalties under said ordinance, and that others are threatened. It is to obtain relief therefrom that this action is brought.

Defendants contend, first, that complainant has not sustained the burden of proof which the law casts upon it of establishing the facts necessary to invoke the jurisdiction of this court, and more particularly that there is no proof that the amount in controversy herein exceeds $2,000; that it is the amount of the license tax which complainant seeks to be relieved of that determines the jurisdiction; second, that no complaint is made by the bill that the ordinance is unreasonable or oppressive, or that the rates are excessive, or that the ordinance is discriminatory against complainant, further, that the business of complainant does not fall within the domain of interstate commerce, and therefore that the commerce clause of the Constitution is not violated.

[1] 1. This suit is not merely to enjoin the collection of a tax. It involves the asserted right of the complainant to do an interstate business without tax or burden thereon. In such cases the jurisdiction is determined by the value of the right to be protected or the extent of the injury to be prevented, and not by the mere amount of the license fee involved. State of Arkansas v. Kansas & T. Coal Co. et al. (C. C.) 96 Fed. 353; Humes v. City of Ft. Smith (C. C.) 93 Fed. 857; Sanford v. Poe, 69 Fed. 546, 16 C. C. A. 305, 60 L. R. A. 641; Nashville, C. & St. L. Ry. Co. v. McConnell (C. C.) 82 Fed. 65–70. "Nor can it be reasonably claimed that the plaintiff must postpone his application to the Circuit Court, as a court of equity, until his property to an amount exceeding in value two thousand dollars has been actually seized and confiscated, and when the preventive remedy by injunction would be of no avail." Scott v. Donald, 165 U. S. 107, 17 Sup. Ct. 262, 41 L. Ed. 648. "A court of equity has jurisdiction of a suit to enjoin the enforcement of an illegal city ordinance imposing a license tax, where, in addition to the illegality of the tax, it is shown that, if the city is permitted to proceed to enforce it by the remedies provided, complainant will be called upon to defend a multitude of criminal prosecutions, and will suffer irreparable injury in its business. A federal court has jurisdiction of a suit to

enjoin the enforcement of an illegal license tax imposed on complainant's business by a city ordinance, and enforceable by the daily arrest of its employés, which it is alleged will result in serious interference with its business and a direct loss exceeding $2,000. In such case the amount involved for jurisdictional purposes is not alone the amount of the tax demanded, but the value of complainant's right to conduct its business without being subjected to such tax." City of Hutchinson v. Beckham, 118 Fed. 399, 55 C. C. A. 333. "A bill, seeking a mandatory injunction to compel a defendant railway company to give complainant equal facilities with others for receiving and shipping cattle, alleged that the damage done by the refusal of such equal facilities was irreparable, and largely exceeded $2,000. Held that, in the absence of a plea to the jurisdiction, this allegation was sufficient, though denied by the answer, and not sustained by any proof." Butchers' & Drovers' Stockyards Co. v. Louisville & N. R. Co., 67 Fed. 35, 14 C. C. A. 290. See, also, Texas & Pacific Ry. v. Kuteman, 54 Fed. 549, 4 C. C. A. 503; South Dakota Cent. Ry. Co. v. Chicago, M. & St. P. Ry. Co., 141 Fed. 578, 73 C. C. A. 176; Pine v. Mayor, etc., of City of New York (C. C.) 103 Fed. 337; Lord v. De Witt (C. C.) 116 Fed. 713. This doctrine is now so well settled as to admit of no further discussion. It is equally well established that:

"The enforcement of a municipal ordinance, void for interference with interstate commerce, by criminal proceedings, with frequent arrests and other arrests threatened, will be enjoined." Jewel Tea Co. v. Lee's Summit, Mo. (C. C.) 189 Fed. 280; Shawnee Milling Co. v. Temple (C. C.) 179 Fed. 517; Sylvester Coal Co. et al. v. City of St. Louis et al., 130 Mo. 323, 32 S. W. 649, 51 Am. St. Rep. 566; Dobbins v. City of Los Angeles, 195 U. S. 223, 25 Sup. Ct. 18, 49 L. Ed. 169; City of Hutchinson v. Beckham, 118 Fed. 399, 55 C. C. A. 333.

[2] 2. It remains only to consider whether this ordinance is, in fact, as to this complainant an interference with interstate commerce, and imposes an unlawful tax and burden thereon. This court in granting the temporary injunction answered this question in the affirmative from the allegations of the bill, and the proofs have not altered the situation in any substantial particular. Fortunately, decisions of the Supreme Court of the United States have practically covered all the matters involved in this controversy. In May v. New Orleans, 178 U. S. 496, 20 Sup. Ct. 976, 44 L. Ed. 1165, the court held:

"That a state cannot, in the form of a license or otherwise, tax the right of the importer to sell, but, when the importer has so acted upon the goods imported that they have been incorporated or mixed with the general mass of property in the state, such goods have then lost their distinctive character as imports."

While this case dealt with foreign importations, the principle applies equally to goods shipped in interstate commerce. It remains only to inquire what "action" by the interstate shipper is necessary to subject the property to state taxation. Incidentally, it may be observed that interstate commerce is equally burdened, whether it be by direct tax upon the property, or by an indirect tax upon the party or his agent, in the form of a license fee for carrying on the business.

In Rearick v. Pennsylvania, 203 U. S. 507, 27 Sup. Ct. 159, 51 L. Ed. 295, it was said:

"When orders are given for goods sold in a state by an agent of a person employed to solicit them in another state, and the purchaser is not bound to pay for the goods until delivery and unless according to sample, the goods sent specifically to the customer in fulfillment of such orders are, until actually delivered, within the protection of the commerce clause of the Constitution, and a municipal ordinance requiring a license fee for the solicitation of orders for delivering goods not of the parties' own manufacture is void as an interference with interstate commerce against such an agent."

Here an Ohio corporation employed an agent to solicit in Pennsylvania retail orders to the company for groceries. When the company had received a large number of such orders, it filled them at its place of business in Ohio by putting up the objects of the several orders in distinct packages and forwarding them to its agent by rail, addressed to him. The agent alone had authority to receive the goods from the railroad, and, when he received them, he delivered them, as was his duty, to the customers, for cash paid to him. He then sent the money to the corporation. The customer had the right to refuse the goods if not equal to the sample shown to him when he gave the order. No shipments were made to the agent except to fill such orders, and no deliveries were made by him except to the parties named on the packages. The only difference between that case and the one at bar is that here the complainant ships to its own order, its agent alone having authority to receive the goods from the railroad for delivery and payment, and the further fact that in the Pennsylvania case each package was marked for the specific customer. This, the defendants contend, makes a vital distinction. In both cases, for convenience, the goods are shipped together in one large package, which is broken by the agent and the smaller parcels are then delivered to the persons ordering them. The defendants contend that under the facts the small package was the original package in the Rearick Case, and the larger package the original package in the case at bar. Reference to the original package cases, however, discloses that this feature is important only when the goods are shipped not for specific delivery to definite persons, but for general and indiscriminate sale in the regular course of business. May v. New Orleans, supra; American Steel & Wire Co. v. Speed, 192 U. S. 500, 24 Sup. Ct. 365, 48 L. Ed. 538; Leisy v. Hardin, 135 U. S. 100, 10 Sup. Ct. 681, 34 L. Ed. 128; Austin v. Tennessee, 179 U. S. 343, 21 Sup. Ct. 132, 45 L. Ed. 224.

In Rearick v. Pennsylvania, supra, the court said:

"The doctrine as to original packages primarily concerns the right to sell within the prohibiting or taxing state goods coming into it from outside. When the goods have been sold before arrival the limitations that still may be found to the power of the state will be due, generally, at least, to other reasons, and we shall consider whether the limitations may not exist, irrespective of that doctrine, in some cases where there is no executed sale. * * * Commerce among the several states is a practical conception not drawn from the 'witty diversities' of the law of sales. The brooms were specifically appropriated to specific contracts, in a practical, if not in a technical, sense. Under such circumstances it is plain that, wherever might

have been the title, the transport of the brooms for the purpose of fulfilling the contracts was protected commerce."

The case of American Steel & Iron Co. v. Speed, 192 U. S. 500, 24 Sup. Ct. 365, 48 L. Ed. 538, is then distinguished on the ground that:

"It dealt with a case where a mass of nails and iron wire was collected at Memphis from other states by a manufacturer for all purposes, some of the goods to be sold on the spot, some ultimately to be forwarded to purchasers in other states, but no package being consigned to or intended for any special customer."

Of course, so long as the goods shipped are kept under the control of the complainant for the purpose of ultimate delivery to the party ordering the same, they do not lose their identity as articles of interstate commerce.

In Caldwell v. North Carolina, 187 U. S. 622, 632, 23 Sup. Ct. 229, 233 (47 L. Ed. 336), the court said:

"Nor does the fact that these articles were not shipped separately and directly to each individual purchaser, but were sent to an agent of the vendor at Greensboro, who delivered them to the purchasers, deprive the transaction of its character as interstate commerce. It was only that the vendor used two, instead of one, agency in the delivery. It would seem evident that, if the vendor had sent the articles by an express company, which should collect on delivery, such a mode of delivery would not have subjected the transaction to state taxation. The same could be said if the vendor himself, or by a personal agent, had carried and delivered the goods to the purchaser. That the articles were sent as freight by rail, and were received at the railroad station by an agent who delivered them to the respective purchasers, in no wise changes the character of the commerce as interstate."

In Dozier v. Alabama, 218 U. S. 124, 30 Sup. Ct. 649, 54 L. Ed. 965, 28 L. R. A. (N. S.) 264, the question was whether where, under the contract to purchase a picture, the purchaser has the option to take at a specified price the frame in which the picture was to be delivered; both picture and frame being manufactured in and delivered from another state and remain the property of the vendor until paid for, the sale of the frame is a part of the original transaction and protected by the commerce clause of the Constitution. The court held that it mattered not at what particular time or place the title was conceded to pass, where the transaction was unquestionably one of interstate commerce. It was there said:

"The protection of the commerce clause of the federal Constitution extends beyond the strict lines of contract, and inseparable incidents of a transaction of interstate commerce based on contract are also interstate commerce. * * * No doubt it is true that the customer was not bound to take the frame unless he saw fit, and that the sale of it took place wholly within the state of Alabama, if a sale was made. But as was hinted in Rearick v. Pennsylvania, 203 U. S. 507, 512 [27 Sup. Ct. 159, 51 L. Ed. 295], what is commerce among the states is a question depending upon broader considerations than the existence of a technically binding contract, or the time and place where the title passed."

My attention has been called to the opinion of the Supreme Court of Missouri in State v. Looney, 214 Mo. 216, 97 S. W. 934, 99 S. W. 1165, 29 L. R. A. (N. S.) 412, in which a different conclusion was reached; but, inasmuch as that decision appears to be in conflict with

that of the Supreme Court of the United States in Dozier v. Alabama, supra, it is obvious that it must yield to the authority of the latter case.

It is apparent that the cases above referred to cover every important feature of that under consideration, unless a distinction arises from the single fact that the package was not labeled in the name of the specific customer ordering it. There is no doubt that the goods were ordered as a transaction in interstate commerce. They were shipped in interstate commerce, and preserved their identity as such until they came into the hands of the specific purchaser. The agent sold only upon order, and delivered only to those who had previously ordered. Is the mere omission to label the package sufficient to change the character of the entire transaction? I think not. To paraphrase the language of the Supreme Court in Dozier v. Alabama, "what is commerce among the states is a question depending upon broader considerations" than a mere label upon a package. It depends upon the facts disclosed by the proofs. These goods started in interstate commerce, and were preserved in interstate commerce until final delivery, and there is nothing in the record to the contrary. No doubt a case could arise under which the facts peculiar to it would lead to a different conclusion. In their brief defendants say:

"It can be readily seen how easily the tax laws of the states and municipalities can be evaded, if the transaction in this case is held to be interstate commerce. Of course, the agent testified that he did not sell to any one except the persons who had ordered goods, but it is the opportunity afforded by such a method of doing business of evading the law that condemns that method."

Cases, however, are decided upon what litigants, in fact, do, and not upon what they might or could do if they sought to evade the law. Here the undisputed evidence is that the complainant does not do that which would render it amenable to this ordinance. It does not sell to any one except the persons who have ordered goods. No doubt such persons might refuse such goods if they were not in accordance with contract, just as was their privilege in the Rearick Case and in the Dozier Case. In fact, it is disclosed by the testimony that some purchasers do fail to take the goods ordered, but in such cases complainant's agent does not sell indiscriminately to others, but ships the articles back to the branch house in Kansas City. What is done with them there does not appear, but certainly nothing with which the city of Lee's Summit or its officers can be concerned.

It matters not that complainant formerly shipped its goods from Kansas City, and changed its method in order to bring itself strictly within the protection of the commerce clause. If it is entitled to the protection of that clause, we may not be concerned with its motive, nor is it valid argument to urge that complainant's business introduces competition which diminishes the sales of local merchants. The commerce clause of the Constitution was designed to protect those doing business under its guaranties from being subjected to interference because of local prejudices which may exist in different localities. Presumably, every person who does business through the agencies of interstate commerce pays taxes and license fees at the point of legal

domicile. This is all that can be required of him. "A burden imposed upon interstate commerce is not to be sustained simply because the statute imposing it applies alike to the people of all the states, including the people of the state enacting it." Minnesota v. Barber, 136 U. S. 313, 10 Sup. Ct. 862, 34 L. Ed. 455. It follows that as to all future enforcement of this ordinance the temporary injunction must be made permanent.

[3] It is believed, however, that this court is without jurisdiction to enjoin the prosecutions already pending when the bill was filed. Section 720 of the Revised Statutes (U. S. Comp. St. 1901, p. 581) provides that:

"The writ of injunction shall not be granted by a court of the United States to stay proceedings in a court of a state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

Provisions of this section relate only to the stay of proceedings begun in the courts of a state before any resort to the federal court. Lanning v. Osborne et al. (C. C.) 79 Fed. 657–662, and cases cited. See, also, the opinion of this court in Kansas City Gas Co. v. Kansas City et al., 198 Fed. 500, District Court, Western District of Missouri, No. 3,793. With respect to prosecutions pending before the bill was filed, the temporary injunction heretofore granted will be dissolved.

A decree may be entered in accordance with the views expressed in this opinion.