**McCORMICK & CO., Inc., et al. v. BROWN, State Com'r of Prohibition, et al.**

**No. 3141.**

Circuit Court of Appeals, Fourth Circuit.

Oct. 12, 1931.

Philip C. Friese, of Baltimore, Md., and H. D. Rummel, of Charleston, W. Va. (Rum-

mel, Blagg & Stone, of Charleston, W. Va., on the brief), for appellants.

W. G. Brown, of Summersville, W. Va., and R. Dennis Steed, of Charleston, W. Va. (H. B. Lee, Atty. Gen., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

A bill in equity was filed in the District Court by McCormick & Co., Inc., a Maryland corporation, engaged in the city of Baltimore in the manufacture of various products used for toilet and culinary purposes, and Durham Bros. Company, a Virginia corporation, engaged as a wholesale dealer in groceries and food products in the city of Roanoke, Va., as complainants, against W. G. Brown, state commissioner of prohibition of the state of West Virginia, and Howard B. Lee, Attorney General of that state. The suit was instituted by the complainants on their own behalf and for the benefit of numerous other nonresident manufacturers or wholesale dealers in commercial products containing ethyl alcohol as a necessary solvent or preservative, to secure an injunction to restrain the state officials from requiring them to procure permits at the cost of $50 per annum for the sale and transportation of their goods, and from prosecuting any proceeding for their refusal to procure such permits.

The complainants alleged that these products are used and usable exclusively for medicinal, mechanical, toilet, or culinary purposes, and are manufactured and sold under permits issued by the United States Bureau of Industrial Alcohol, and approved by the United States Bureau of Prohibition; and that none of them contains intoxicating liquors or is fit for beverage purposes within the meaning of the laws of the United States. The state commissioner had declared that all products purchased from nonresident dealers, not clothed with permits, would be subject to seizure, confiscation, and destruction, and the persons selling or keeping for sale the products in West Virginia would be prosecuted under the criminal laws of the state. These requirements of the commissioner, it was charged, were without authority in law and constituted unwarranted attempts on his part to hinder and obstruct complainants' lawful interstate commerce. They asserted that the jurisdiction of the court was established because the matter in controversy exceeded in value the sum of $3,000, and the complainants and defendants were respectively citizens of different states; and also because the complainants sought in the suit to redress the deprivation, under color of unlawful regulation by the commissioner of prohibition, of rights, privileges, and immunities secured to the complainants by the Constitution of the United States, to wit, the right to ship and transport the products manufactured or sold by them in interstate commerce free from unlawful restrictions or regulation by the commissioner of prohibition.

The state officials, by answer, denied the jurisdictional allegations of the bill of complaint and asserted that all of their actions performed or threatened were authorized by certain state enactments and regulations, of which the following is a résumé: A constitutional amendment, effective on and after July 1, 1914 (Constitution of West Virginia, art. 6, § 46), prohibited the manufacture or sale of intoxicating liquor within the state, except liquors for medicinal, pharmaceutical, mechanical, sacramental, and scientific purposes, and except the sale of denatured alcohol for industrial purposes under regulations to be prescribed by the Legislature. That body was enjoined to enact laws to carry the amendment into effect and laws were passed which are now codified in chapter 60 of the Official Code of West Virginia of 1931. The word "liquors" was given a wide significance so as to include not only all kinds of intoxicating beverages, but also all liquors, mixtures, or preparations, whether patented or not, which will produce intoxication. Section 1, article 1. The manufacture and sale of liquors was placed under the supervision of a commissioner of prohibition and under such rules and regulations as he might from time to time prescribe. Section 3, article 2. No one is allowed to sell, purchase, or transport any liquor without first obtaining a permit from the commissioner of prohibition so to do. Permits expire annually on December 31. The fee for a manufacturer's or wholesale dealer's permit is $50. Section 5, article 1. In case of sale, in which a shipment or delivery of liquor is made by a carrier, the sale is deemed to be made in the county where the delivery is made to the consignee. Section 4, article 1. Common carriers are forbidden to carry liquors into the state, and persons in the state are forbidden to receive liquors from a carrier except in case

of pure grain alcohol and wine and such preparations as may be sold by druggists. Sections 9 and 13 of article 1. It is unlawful for any nonresident vendor to sell or furnish liquors to any person within the state when such liquors are intended by any person interested therein to be received, possessed, sold, or in any manner used in violation of the state laws; and in case the delivery of the liquors is made by a carrier, the sale or furnishing is deemed to be made in the county wherein the delivery is made. Section 11, article 1.

The commissioner of prohibition appointed under the authority of the statutes has promulgated certain regulations, wherein a nonresident manufacturer, doing business in the state, is classed and treated as a wholesale dealer of whom an annual license fee of $50 is required. A wholesale dealer is declared to be one whose business is that of selling at wholesale, ethyl alcohol in any form, whether pure, medicated, or denatured, and wine as permitted and supervised by the federal government, or selling as aforesaid any liquid mixture or preparation, whether patented or not, which will produce intoxication or come within the definition of liquors in section 1, article 1, of the state law. The regulations of the commissioner also classify alcoholic preparations, defining those the sale of which is prohibited in the state, those which may be sold by the drug trade only under permit, those which may be sold by all dealers under permit, and those which may be sold by all dealers without permit. Goods of the sort manufactured and sold by the complainants are placed in the category of those which may be sold by dealers only under permit.

Thus it appears that the state statutes cover the activities of nonresident vendors, when the liquors sold or furnished by them are intended to be used in violation of the local law, and the term "liquors" has been given a significance sufficiently broad to include the products of the complainants; and the commissioner's regulations have classified nonresident manufacturers of liquor doing business in the state as wholesale dealers required to take out an annual permit before sending merchandise into the state, and have classified the goods of the kind made or sold by complainants as those which may be sold only under permit.

Upon their allegations, the complainants prayed an injunction against the commissioner and the Attorney General to restrain them from requiring complainants by legal proceedings to take out permits and pay the license fees, and from causing the complainants to be arrested for refusal to procure permits, and from interfering in any manner with complainants' business. An order upon the defendants to show cause why a preliminary injunction should not be granted, and also a temporary restraining order pending the hearing on the preliminary injunction, were prayed. Thereupon the District Judge issued a temporary restraining order which seems to have been kept alive by consent until the hearing and determination of the motion for preliminary injunction. The final decree recites that this motion was submitted to the court on the pleadings, exhibits, and affidavits of the parties, whereupon the court decreed that the preliminary injunction be granted until its further order. By consent of all the parties, the application for a permanent injunction was then submitted upon the same pleadings, exhibits, and affidavits which were considered upon the motion for preliminary injunction; and the court, being of the opinion that the complainants had not shown themselves entitled to the relief prayed, adjudged in the same decree that the application for permanent injunction should be denied and the preliminary injunction theretofore granted should be dissolved. The complainants appealed.

The complainants concede the constitutional validity of the statutes of West Virginia, but complain that the state officials have wrongfully interpreted them to authorize the regulations of the prohibition commissioner and the actions injurious to the complainants which he threatens to take. The right of the state to exercise a measure of control over the interstate commerce in intoxicating liquor within its borders is conceded by complainants, by reason of the provisions of the Wilson Act of August 8, 1890 (27 USCA § 121), the Webb-Kenyon Act of March 1, 1913 (27 USCA § 122), and the Reed Amendment of March 3, 1917 (27 USCA § 123); but it is contended that the term "intoxicating liquors" was used in the same significance in these statutes as in the National Prohibition Act and hence must be limited to liquors containing ½ of 1 per cent. or more of alcohol by volume, which are fit for beverage purposes. 27 USCA § 4. Hence it is said that Congress has given the state no authority to regulate, control, or forbid the interstate commerce in other products containing alcohol, and the traffic in them is lawful and unrestricted if the

laws and regulations of the federal government are obeyed. In addition, it is contended that West Virginia has passed no statute applicable to the business of the complainants because they sell only to licensed local dealers, and there is no intent on the part of any interested person to violate the state law. And so complainants reach the conclusion that the regulation of the commissioner requiring them to take out permits and pay license fees for doing business in West Virginia is without warrant of authority in either federal or state law; and constitutes an unwarranted exercise of the power to regulate interstate commerce committed to Congress by the Constitution of the United States.

These contentions are strongly combatted by the representatives of the state who claim that the commissioner of prohibition is supported by both federal and state legislation in every official act affecting the complainants which he has performed or threatened to perform. They contend also that the District Court was without jurisdiction to hear and determine the case on the ground that the matter in controversy does not exceed $3,000, as required by statute, 28 USCA § 41 (1), since the license fee was only $50 and it was not clearly shown that a business equal in value to the jurisdictional amount was involved. It is not entirely clear under the state laws and regulations that the commissioner of prohibition has not the power in his discretion to refuse a permit to a nonresident manufacturer or wholesale dealer who offers to pay the license fee. Moreover, there are cases which hold that when a license to do business is concerned, the amount involved is not measured by the size of the burden thus imposed but by the value of the business interfered with. Southern Exp. Co. v. Mayor, etc., of Ensley (C. C.) 116 F. 756; City of Hutchinson v. Beckham (C. C. A.) 118 F. 399; Board of Trade v. Cella Commission Co. (C. C. A.) 145 F. 28; Jewel Tea Co. v. Lee's Summit (D. C.) 198 F. 532; Campbell Baking Co. v. City of Maryville (D. C.) 31 F.(2d) 466. Compare McNeill v. Southern Ry. Co., 202 U. S. 543, 26 S. Ct. 722, 50 L. Ed. 1142; Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co., 239 U. S. 121, 36 S. Ct. 30, 60 L. Ed. 174; Packard v. Banton, 264 U. S. 140, 44 S. Ct. 257, 68 L. Ed. 596; Western & Atl. R. R. v. Railroad Commission, 261 U. S. 264, 43 S. Ct. 252, 67 L. Ed. 645.

But we need go no further with the conflicting arguments, for in our opinion we are without jurisdiction to decide the issues raised. The District Court, as organized with a single judge, was without authority to hear and determine the case below and this court has no power to entertain this appeal. It is obvious that the District Judge was of the opinion that the case fell within the jurisdiction of the District Court, for he proceeded to hear and determine it. But having concluded that the District Court had jurisdiction of the controversy, it was clearly his duty to organize a court of three judges to try the case under the provisions of the Act of Congress codified in 28 USCA § 380. It provides that no interlocutory injunction suspending or restraining the enforcement of any state statute by restraining the action of any officer of the state in the enforcement thereof, or in the enforcement or execution of an order made by an administrative board or commission, acting under the statute of the state, shall be issued or granted upon the ground of the unconstitutionality of the statute unless the application shall be determined and heard by three judges, one of whom shall be a Justice of the Supreme Court or a Circuit Judge. And it is settled that a court of three judges is required not only when the constitutionality of the state statute is involved, but also when the constitutionality of an order of a state administrative board or commission, purporting to be authorized by state statute, is drawn into question. A single individual, such as the prohibition commissioner of the state of West Virginia, may constitute a state administrative board or commission within the meaning of the act. Oklahoma Natural Gas Co. v. Russell, 261 U. S. 290, 43 S. Ct. 353, 67 L. Ed. 659; Herkness v. Irion, 278 U. S. 92, 49 S. Ct. 40, 73 L. Ed. 198. That the constitutionality of an order of the state prohibition commissioner was involved is manifest from the foregoing outline of the pleadings and of the state laws and regulations in regard to intoxicating liquors.

The complainants contend that under Moore v. Fidelity & Deposit Co., 272 U. S. 318, 47 S. Ct. 105, 71 L. Ed. 273, and Ex parte Hobbs, 280 U. S. 168, 50 S. Ct. 83, 74 L. Ed. 353, a court of three judges was not necessary because the application for interlocutory injunction was not pressed. But we find nothing in these cases to justify the trial of the pending case by a single judge.

In Moore v. Fidelity & Deposit Co., the prayer for preliminary injunction was not pressed. In Ex parte Hobbs, the District Judge decided only that the action of a state commissioner was not authorized by a state statute, declaring that this was the only question before him. He did not pass upon the constitutionality of the statute. In the pending case, on the other hand, the District Judge, in concluding that the bill of complaint should be dismissed, was obliged to decide not only that the action of the prohibition commissioner was authorized by the statute of the state, but also that it did not conflict with the federal Constitution. Moreover, the application for preliminary injunction was made at the beginning of the case and was pressed to a final conclusion. At the outset, the complainants secured from the District Judge a temporary restraining order which he was authorized to grant only as an incident to the application for temporary injunction; and at the end of the case, in its final decree, the action of the court in granting the temporary restraining order to protect the complainants during the interval between the institution of the suit and the final determination thereof from the threatened actions of the commissioner was confirmed by the express grant of the preliminary injunction.

We think, therefore, that the case is governed by the more recent decision of the Supreme Court in Stratton v. St. Louis S. W. R. Co., 282 U. S. 10, 51 S. Ct. 8, 10, 75 L. Ed. 135. That was a suit by the railway company to restrain the enforcement of a state statute providing for the payment of a minimum franchise tax upon the ground that the statute violated the federal Constitution. The bill prayed both a preliminary and permanent injunction against the Secretary of State from instituting proceedings to assess the tax or enforce the penalties prescribed in case of refusal to pay. A motion for a temporary restraining order was granted by the District Judge enjoining the defendant as prayed pending the determination of the application for an interlocutory injunction. While this order was in force, the defendant moved to dismiss the bill for want of equity, and this motion was granted by the District Judge. St. Louis-Southwestern R. Co. v. Emmerson, 27 F. (2d) 1005. On appeal this decree was reversed by the Circuit Court of Appeals, 30 F. (2d) 322, and from its decree an appeal was taken to the Supreme Court. That court held that the decree should be reversed and the case remanded to the Circuit Court of Appeals with directions to dismiss the appeal to that court for want of jurisdiction on the ground that the District Judge was without jurisdiction to entertain the motion for interlocutory injunction. The court said:

"If an application for an interlocutory injunction is made and pressed to restrain the enforcement of a state statute, or of an administrative order made pursuant to a state statute, upon the ground that such enforcement would be in violation of the Federal Constitution, a single judge has no jurisdiction to entertain a motion to dismiss the bill on the merits. He is as much without power to dismiss the bill on the merits as he would be to grant either an interlocutory or a permanent injunction. His authority is strictly limited to granting, upon proper cause being shown, a temporary restraining order to be effective only pending the determination of the application for an interlocutory injunction. Upon making such an order, it is his duty immediately to call two other judges, as the statute directs, to assist him in hearing and determining that application. Ex parte Northern Pacific Ry. Co., 280 U. S. 142, 144, 50 S. Ct. 70, 74 L. Ed. 233.

"If a single judge, thus acting without jurisdiction, undertakes to enter an order granting an interlocutory injunction or a final decree, either dismissing the bill on the merits or granting a permanent injunction, no appeal lies from such an order or decree to this Court as the statute plainly contemplates such a direct appeal only in the case of an order or decree entered by a court composed of three judges in accordance with the statutory requirement. Nor does an appeal lie to the Circuit Court of Appeals from an order or decree thus entered by a District Judge without authority, for to sustain a review upon such an appeal would defeat the purpose of the statute by substituting a decree by a single judge and an appeal to the Circuit Court of Appeals for a decree by three judges and a direct appeal to this Court. * * *

"The requirement of the statute has regard to substance and not to form. It matters not whether the injunction is called preliminary or interlocutory, or is styled a temporary restraining order, if it is granted to restrain the enforcement of state legislation and is continued in force until the hearing on the merits, without such restraint pending the suit being made the subject

of consideration and determination by three judges as the statute requires. The temporary restraining order which the District Judge, acting alone, could grant is only to maintain the status quo, on proper cause being shown, for such time as may be necessary to obtain a decision upon the application for an interlocutory injunction by a court of three judges, which is to be immediately convened."

It follows that the action of the District Judge in passing upon the application for interlocutory injunction and upon the merits of the case at the final hearing was in excess of his jurisdiction. When complainants asserted that the orders of the state prohibition commissioner violated their constitutional rights and made application for an interlocutory injunction, it was incumbent upon the District Judge, being of the opinion that the District Court had jurisdiction of the controversy, immediately to organize a court of three judges for the further conduct of the case; and from the decree of such a court, an appeal lay direct to the Supreme Court of the United States. 28 USCA § 380.

The appeal to this court must therefore be dismissed for want of jurisdiction.

Dismissed.