McCORMICK & CO., Inc., et al. v. BROWN, State Com'r of Prohibition, et al.

No. 2866.

District Court, S. D. West Virginia.

Oct. 21, 1931.

Philip C. Friese, of Baltimore, Md., and Rummel Blagg & Stone, of Charleston, W. Va., for plaintiffs.

Howard B. Lee and R. Dennis Steed, both of Charleston, W. Va., and W. G. Brown, of Summersville, W. Va., for defendants.

Before NORTHCOTT, Circuit Judge, and BAKER and McCLINTIC, District Judges.

NORTHCOTT, Circuit Judge.

A bill in equity was filed in this court by McCormick & Co., Inc., a Maryland corporation, engaged in the city of Baltimore in the manufacture of various products used for toilet and culinary purposes, and Durham Bros. Company, a Virginia corporation, engaged as a wholesale dealer in groceries and food products in the city of Roanoke, Va., as complainants, against W. G. Brown, State Commissioner of Prohibition of the State of West Virginia, and Howard B. Lee, Attorney General of that state. The suit was instituted by the complainants on their own behalf and for the benefit of numerous other nonresident manufacturers or wholesale dealers in commercial products containing ethyl alcohol as a necessary solvent or preservative, to secure an injunction to restrain the state officials from requiring them to procure permits at the cost of $50 per annum for the sale and

transportation of their goods, and from prosecuting any proceeding for their refusal to procure such permits.

The District Court granted the appellants a temporary restraining order, and at a later date, a preliminary injunction. By agreement of the parties, the cause was submitted for final hearing upon the same evidence introduced upon the hearing for the preliminary injunction. On the final hearing the District Court denied the application for a permanent injunction and dissolved the preliminary injunction theretofore granted.

From this action of the District Court complainants appealed to the Circuit Court of Appeals for the Fourth Circuit, 52 F.(2d) 934, which court handed down an opinion by Soper, Circuit Judge, on October 12, 1931, holding that the case was one falling within the provisions of section 266 of the Judicial Code as amended (28 USCA § 380), and that it was the duty of the District Judge to convene a three-judge court to try the case in accordance with that act.

The District Judge called a three-judge court, which convened at Charleston, W. Va., on October 21, 1931, and after argument the cause was submitted on the record as it was made up for the former hearing.

### Findings of Fact.

The court adopts as correct the statement in the opinion of the Circuit Court of Appeals above referred to, 52 F.(2d) 934, 935, both as to the facts and the contentions of the parties. This statement is as follows:

"The complainants alleged that these products are used and usable exclusively for medicinal, mechanical, toilet, or culinary purposes, and are manufactured and sold under permits issued by the United States Bureau of Industrial Alcohol, and approved by the United States Bureau of Prohibition; and that none of them contains intoxicating liquors or is fit for beverage purposes within the meaning of the laws of the United States. The state commissioner had declared that all products purchased from nonresident dealers, not clothed with permits, would be subject to seizure, confiscation, and destruction, and the persons selling or keeping for sale the products in West Virginia, would be prosecuted under the criminal laws of the state. These requirements of the commissioner, it was charged, were without authority in law and constituted unwarranted attempts on his part to hinder and obstruct complainants' lawful interstate commerce. They asserted that the jurisdiction of the court was established be-

cause the matter in controversy exceeded in value the sum of $3,000, and the complainants and defendants were respectively citizens of different states; and also because the complainants sought in the suit to redress the deprivation, under color of unlawful regulation by the commissioner of prohibition, of rights, privileges, and immunities secured to the complainants by the Constitution of the United States, to wit, the right to ship and transport the products manufactured or sold by them in interstate commerce free from unlawful restrictions or regulation by the commissioner of prohibition.

"The state officials, by answer, denied the jurisdictional allegations of the bill of complaint and asserted that all of their actions performed or threatened were authorized by certain state enactments and regulations, of which the following is a résumé: A constitutional amendment, effective on and after July 1, 1914 (Constitution of West Virginia, art. 6, § 46), prohibited the manufacture or sale of intoxicating liquor within the state, except liquors for medicinal, pharmaceutical, mechanical, sacramental, and scientific purposes, and except the sale of denatured alcohol for industrial purposes under regulations to be prescribed by the Legislature. That body was enjoined to enact laws to carry the amendment into effect and laws were passed which are now codified in chapter 60 of the Official Code of West Virginia of 1931. The word 'liquors' was given a wide significance so as to include not only all kinds of intoxicating beverages, but also all liquors, mixtures, or preparations, whether patented or not, which will produce intoxication. Section 1, article 1. The manufacture and sale of liquors was placed under the supervision of a commissioner of prohibition and under such rules and regulations as he might from time to time prescribe. Section 3, article 2. No one is allowed to sell, purchase or transport any liquor without first obtaining a permit from the commissioner of prohibition so to do. Permits expire annually on December 31. The fee for a manufacturer's or wholesale dealer's permit is $50. Section 5, article 1. In case of sale, in which a shipment or delivery of liquor is made by a carrier, the sale is deemed to be made in the county where the delivery is made to the consignee. Section 4, article 1. Common carriers are forbidden to carry liquors into the state, and persons in the state are forbidden to receive liquors from a carrier except in case of pure grain alcohol and wine and such preparations as may be sold by druggists. Sections 9 and 13 of article 1. It is unlawful for any non-resident vendor to sell or furnish liquors to any person within the state when such liquors are intended by any person interested therein to be received, possessed, sold, or in any manner used in violation of the state laws; and in case the delivery of the liquors is made by a carrier, the sale or furnishing is deemed to be made in the county wherein the delivery is made. Section 11, article 1.

"The commissioner of prohibition appointed under the authority of the statutes has promulgated certain regulations, wherein a nonresident manufacturer, doing business in the state, is classed and treated as a wholesale dealer of whom an annual license fee of $50 is required. A wholesale dealer is declared to be one whose business is that of selling at wholesale, ethyl alcohol in any form, whether pure, medicated, or denatured, and wine as permitted and supervised by the federal government, or selling as aforesaid any liquid mixture or preparation, whether patented or not, which will produce intoxication or come within the definition of liquors in section 1, article 1, of the state law. The regulations of the commissioner also classify alcoholic preparations, defining those the sale of which is prohibited in the state, those which may be sold by the drug trade only under permit, those which may be sold by all dealers under permit, and those which may be sold by all dealers without permit. Goods of the sort manufactured and sold by the complainants are placed in the category of those which may be sold by dealers only under permit.

"Thus it appears that the state statutes cover the activities of nonresident vendors, when the liquors sold or furnished by them are intended to be used in violation of the local law, and the term 'liquors' has been given a significance sufficiently broad to include the products of the complainants; and the commissioner's regulations have classified nonresident manufacturers of liquor doing business in the state as wholesale dealers required to take out an annual permit before sending merchandise into the state, and have classified the goods of the kind made or sold by complainants as those which may be sold only under permit.

"Upon their allegations, the complainants prayed an injunction against the commissioner and the Attorney General to restrain them from requiring complainants by legal proceedings to take out permits and pay the license fees, and from causing the complainants to be arrested for refusal to procure permits, and from interfering in any manner

with complainants' business. An order upon the defendants to show cause why a preliminary injunction should not be granted, and also a temporary restraining order pending the hearing on the preliminary injunction were prayed. Thereupon the District Judge issued a temporary restraining order which seems to have been kept alive by consent until the hearing and determination of the motion for preliminary injunction. The final decree recites that this motion was submitted to the court on the pleadings, exhibits, and affidavits of the parties, whereupon the court decreed that the preliminary injunction be granted until its further order. By consent of all the parties, the application for a permanent injunction was then submitted upon the same pleadings, exhibits, and affidavits which were considered upon the motion for preliminary injunction; and the court, being of the opinion that the complainants had not shown themselves entitled to the relief prayed, adjudged in the same decree that the application for permanent injunction should be denied and the preliminary injunction theretofore granted should be dissolved. The complainants appealed.

"The complainants concede the constitutional validity of the statutes of West Virginia, but complain that the state officials have wrongfully interpreted them to authorize the regulations of the prohibition commissioner and the actions injurious to the complainants which he threatens to take. The right of the state to exercise a measure of control over the interstate commerce in intoxicating liquor within its borders is conceded by complainants, by reason of the provisions of the Wilson Act of August 8, 1890 (27 USCA § 121), the Webb-Kenyon Act of March 1, 1913 (27 USCA § 122), and the Reed Amendment of March 3, 1917 (27 USCA § 123); but it is contended that the term 'intoxicating liquors' was used in the same significance in these statutes as in the National Prohibition Act and hence must be limited to liquors containing ½ of 1 per cent. or more of alcohol by volume, which are fit for beverage purposes. 27 USCA § 4. Hence it is said that Congress has given the state no authority to regulate, control, or forbid the interstate commerce in other products containing alcohol, and the traffic in them is lawful and unrestricted if the laws and regulations of the federal government are obeyed. In addition, it is contended that West Virginia has passed no statute applicable to the business of the complainants because they sell only to licensed local dealers, and there is no intent on the part of any interested person to violate the state law. And so complainants reach the conclusion that the regulation of the commissioner requiring them to take out permits and pay license fees for doing business in West Virginia is without warrant of authority in either federal or state law; and constitutes an unwarranted exercise of the power to regulate interstate commerce committed to Congress by the Constitution of the United States.

"These contentions are strongly combated by the representatives of the state who claim that the commissioner of prohibition is supported by both federal and state legislation in every official act affecting the complainants which he has performed or threatened to perform. They contend also that the District Court was without jurisdiction to hear and determine the case on the ground that the matter in controversy does not exceed $3,000, as required by statute, 28 USCA § 41 (1), since the license fee was only $50 and it was not clearly shown that a business equal in value to the jurisdictional amount was involved. It is not entirely clear under the state laws and regulations that the commissioner of prohibition has not the power in his discretion to refuse a permit to a nonresident manufacturer or wholesale dealer who offers to pay the license fee. Moreover, there are cases which hold that when a license to do business is concerned, the amount involved is not measured by the size of the burden thus imposed but by the value of the business interfered with. Southern Expr. Co. v. Mayor, etc., of Ensley (C. C.) 116 F. 756; City of Hutchinson v. Beckham (C. C. A.) 118 F. 399; Board of Trade v. Cella Commission Co. (C. C. A.) 145 F. 28; Jewel Tea Co. v. Lee's Summit (D. C.) 198 F. 532; Campbell Baking Co. v. City of Maryville (D. C.) 31 F. (2d) 466. Compare McNeill v. Southern Ry. Co., 202 U. S. 543, 26 S. Ct. 722, 50 L. Ed. 1142; Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co., 239 U. S. 121, 36 S. Ct. 30, 60 L. Ed. 174; Packard v. Banton, 264 U. S. 140, 44 S. Ct. 257, 68 L. Ed. 596; Western & Atl. R. v. Railroad Commission, 261 U. S. 264, 43 S. Ct. 252, 67 L. Ed. 645."

### Conclusions of Law.

■ An examination of the authorities cited in the opinion of the Circuit Court of Appeals, 52 F.(2d) 934, on the question of jurisdiction leads us to the conclusion that this court has jurisdiction. The amount is not

measured alone by the size of the license fee required to be paid, but also by the value of the right to do business. This is clearly the law where the state commissioner of prohibition is, as here, given the exercise of some discretion as to the granting or refusing to grant the permit.

The pertinent portion of the West Virginia statute on this point will be found in section 5, article 1, chapter 60, of the Official Code of West Virginia, and reads as follows: "* * * Provided, That no one shall manufacture, sell, keep for sale, purchase or transport any liquors, as defined in section one of this article and as herein excepted, without first obtaining a permit from the commissioner of prohibition so to do. * * *"

As to whether the imposition of the requirement to secure the permit and pay the fee therefor is in violation of the Federal Constitution and laws and a burden on interstate commerce, it was admitted in the argument that if the articles for the sale of which the permit is required properly came under the definition of "liquors" as used in the West Virginia statute, then the state has the right to regulate or restrict their sale within its borders.

Section 1 of article of chapter 60, Official Code of West Virginia, reads as follows: "The word 'liquors,' as used in this chapter, shall be construed to embrace all malt, vinous or spirituous liquors, wine, porter, ale, beer or any other intoxicating drink, mixture or preparation of like nature; and all malt or brewed drinks, whether intoxicating or not, shall be deemed malt liquors within the meaning of this chapter; and all liquids, mixtures or preparations, whether patented or not, which will produce intoxication, and all beverages containing one-half of one per cent or more of alcohol, by volume, shall be deemed spirituous liquors, and all shall be embraced in the word 'liquors,' as used in this chapter."

A careful study of this and the related sections of the West Virginia Code (see opinion of Circuit Court of Appeals, 52 F. (2d) 934) leads us to the conclusion that the articles in question come within the definition of "liquors" as defined by the Legislature of West Virginia. This has been the holding of the West Virginia courts. State v. Muncey, 28 W. Va. 494; State v. Durr, 69 W. Va. 251, 71 S. E. 767, 46 L. R. A. (N. S.) 764; State v. Good, 56 W. Va. 215, 49 S. E. 121; State v. Henry, 74 W. Va. 72, 81 S. E. 569, 4 A. L. R. 1132. That the federal courts are bound by the interpretation

of a state statute by the highest court of that state is unquestioned.

Pursuant to provisions of the state statutes (section 3, article 2, chapter 60), the prohibition commissioner is empowered to prescribe rules and regulations governing the sales of the articles in question. The commissioner, in his regulations, has placed "liquors to be sold by the drug trade only under permit," in Class "B," which class requires the permit and fee complained of. Regulations of this character, when not in conflict with the express statutory provisions, have the force and effect of law. United States v. Butler (C. C. A.) 49 F.(2d) 52, and authorities there cited.

The various acts of Congress, with regard to state prohibition laws that preceded the enactment of the Eighteenth Amendment and the National Prohibition Act (27 USCA), were not repealed by the amendment and the act. Washington v. Miller, 235 U. S. 422, 35 S. Ct. 119, 55 L. Ed. 295. These included the Wilson Act (27 USCA § 121), Webb-Kenyon Act (27 USCA § 122), and the Reed Amendment (27 USCA § 123), and these acts taken together with the amendment and the National Prohibition Act (27 USCA) give the states concurrent power to enforce prohibition and do not invalidate the prohibition laws of a state. These laws employ different definitions and penalties in aid of the amendment. The states are not prohibited from passing their own enforcement laws so long as they do not make legal that which the federal laws make illegal.

Within proper bounds and as long as they do not conflict with the federal law or unduly burden interstate commerce, the laws of West Virginia are determinative of the question here involved. In prohibiting the sale of liquor transported into the state from another state, except under permit from the state commissioner of prohibition, the West Virginia state laws, as enacted and enforced at this time, are valid.

The right of the state commissioner of prohibition to require the permit under the laws of West Virginia is not superseded or affected by the fact that such dealers hold their permit from the federal government. Federal courts will not interfere with the internal affairs of a state when sought to be regulated under state Constitutions and statutes, unless the necessity for such interference is unquestioned. Such a case is not here presented, and the court is of the opinion that the relief prayed for should be denied and the injunction not granted.